## ROSEBOROUGH v. LOFTUS. (No. 2239.)

Court of Civil Appeals of Texas. El Paso. Feb. 21, 1929.

Rehearing Denied Feb. 28, 1929.

Whitaker & Peticolas, of El Paso, for appellant.

Sydney Smith and Knollenberg & Cameron, all of El Paso, for appellee.

PELPHREY, C. J. Appellant brought this suit against appellee for damages for breach of contract to drill an oil well in Hudspeth county, Tex., to a depth of 3,500 feet. Appellant alleges that appellee agreed that, if he (appellant) would obtain an oil lease on 40,000 acres of land in Hudspeth county, Tex., he (appellee) would give to him (appellant) a 10′ per cent. interest in the lease, and would drill a well thereon to a depth of 3,500 feet; that said agreement was partly oral and partly written; that by supplemental agreement appellant's interest was reduced to one-tenth of three-fourths interest; that by a subsequent agreement appellant's interest was reduced to one-tenth of one-half the acreage; that appellant procured an oil and gas lease on more than 40,000 acres of land in Hudspeth county, Tex., in the name of appellee; that in said lease appellee bound himself to drill a well to a depth of 3,500 feet,

unless oil or gas should be found in paying quantities at a lesser depth; that appellee, by the terms of the written agreements between appellant and appellee, impliedly agreed to drill said well to a depth of 3,500 feet; that in addition thereto appellee orally agreed with appellant that, in consideration of the procurement of the said lease, he would drill said well to a depth of 3,500 feet; that in compliance with the lease aforesaid, and his agreement with appellant, appellee spudded in a well on the lease in question, drilled same to a depth of about 2,400 feet; that at that depth appellee abandoned the drilling of the well, and notified appellant that he would go no further therewith; that the interest of appellant amounted to 2,000 acres, and that the value of said lease with a well drilling thereon, said well to be drilled to a depth of 3,500 feet, was $5 per acre, or a total of $10,000; and that appellant was damaged in said amount by appellee's failure to carry out his agreement.

Appellee demurred, both generally and specially, to the petition, answered by a general denial and specially answered alleging that he had fully complied with his obligation under the agreement; that the lease expressly provided that, in case he failed to drill the lease, there would be no further obligation on him, except a forfeiture of the lease, which had been done; that he had frequently tendered to appellant a written cancellation of the lease; that appellant had promoted the lease and represented to appellee that the lease had been plane-tabled and contained a structure likely to produce oil and with two oil sands, at a depth of 1,000 and 2,000 feet respectively, and that said well could be drilled for $17,500; that said representations were false, and that appellee expended $75,000 in drilling said well to a depth of 2,400 feet, and that said expenditure was induced by the false representations of appellant; that no oral obligations or contracts were made with appellant, the only contracts between the parties being in writing; that there was no showing or indication of oil in the well, and that the depth to which the well was drilled was beyond the depth which appellant represented would be necessary; that the lease was valueless as an oil proposition, and that the drilling having passed the depth where oil would be found, as represented by appellant, the probability of finding oil at a greater depth was too speculative and remote upon which to base any actual value of the lease.

The case was submitted to a jury upon special issues and they found that: (1) Defendant did not orally agree with plaintiff on or about the 17th day of October, 1923, in consideration of plaintiff's procuring the lease in evidence, to drill an oil well on the premises to a depth of 3,500 feet, unless oil or gas in paying quantities should be found at a less depth. (2) That the market value in July, 1926, of the one-tenth of one-half interest owned by plaintiff in the oil lease in question, with an oil well drilling thereon, same to be drilled to a depth of 3,500 feet, unless oil or gas in paying quantities was sooner found, was $5,000.

Upon the above findings, the court rendered judgment against appellant, and he has appealed.

## Opinion.

Appellant requested the court to give to the jury the following special charge: "You are instructed to find for the plaintiff for such sum as you may believe, from a preponderance of the evidence, was the market value in July, 1926, of the one-tenth of one-half interest owned by plaintiff in the oil lease on Slaughter & Veale lands, with an oil well drilling on said lands, if same was to be drilled to 3500 feet, unless oil or gas was sooner found," and the court's refusal is made the basis of appellant's first assignment of error.

The second assignment of error complains of the court's action in refusing to render judgment for appellant for $5,000 on the verdict of the jury.

Under the above assignments appellant submits this proposition: "The agreement of the defendant Loftus, that the plaintiff should receive an interest in the Slaughter & Veale oil and gas lease, *'free and clear after the completion of the first well'* carried with it the implied obligation on the part of the defendant Loftus to complete said well, for the breach of which implied obligation or contract plaintiff was entitled to recover judgment."

The parts of the original and supplemental agreements relative to the question are:

Original agreement October 17, 1923:

"The first party in consideration of $10.00 services and time and monies expended, hereby agrees as follows:

"Upon the acquiring by first party of an oil and gas lease on and to 40,000 acres in Hudspeth County, Texas, in which first party acquires a leasehold interest of seven-eighths of the oil and gas on said property, first party agrees as follows:

"Party of the second part in consideration for getting said lease for party of the first part shall receive ten per cent interest in said lease, either in stock of the corporation to be organized or in any other way that the property may be handled, free and clear, after the completion of the first well."

The first supplemental agreement, entered into on August 26, 1925, after setting out the original agreement, reads:

"Now, Therefore, in consideration of the fact that the drilling of said well has cost to date to exceed $75,000.00, instead of about $35,000.00, the original estate, and, Whereas, it is necessary to refinance the said well in order to continue the drilling to a further depth: Now, Therefore, the said Wm. Loftus

and John C. Roseborough, Jr., hereby enter into a supplemental agreement which is as follows:

"Supplemental Agreement.

"In order to enable said Wm. Loftus to finance said well and to continue the drilling said well, the interest that John C. Roseborough, Jr., shall have and own shall be one-tenth ($\frac{1}{10}$) of the remaining interest after said Wm. Loftus has given to any parties furnishing said finance the necessary interest to induce said parties to furnish said finance; however, in no event shall the interest given be more than one-fourth of the entire acreage and not more than one hundred and sixty acres shall be given in the section the well is in or in any close-in acreage to the well."

On June 2, 1926, the parties executed a second supplemental agreement which, after setting out the original and first supplemental agreements, and a letter from Roseborough to Loftus, dated March 10, 1926, reads:

"And, whereas, it is necessary to release certain acreage from said obligation to John C. Roseborough, Jr., the said John C. Roseborough, Jr., and Wm. Loftus hereby agree to change and modify all previous agreements as follows:

"Supplemental Agreement Number Two.

"John C. Roseborough, Jr., shall have one-tenth ($\frac{1}{10}$) interest in all of said lease retained by Wm. Loftus which said one-tenth ($\frac{1}{10}$) interest shall be paid up to the completion of the said well and Wm. Loftus shall have the right to dispose of the necessary interest to finance the completion of the said well but not to exceed one-half ($\frac{1}{2}$) of the entire acreage and not more than three hundred twenty (320) acres in the section the well is in or any close in acreage to the well, and not more than a one-half interest in the well and the forty (40) acres surrounding the well."

The lease by Slaughter & Veale was executed on the 31st day of October, 1923, and a contract to drill the well appears to have been let by appellee either in the latter part of 1923 or early in 1924.

Williston on Contracts, § 1293, has this to say relative to implied contracts:

"It is not for breach of express promises that a contractor is liable but of implied promises as well; and the most serious difficulty in this matter is to determine what promises are fairly to be implied in a given contract. The principle to be adopted, however, is plain; the difficulty lies in its application. Since the governing principle in the formation of contracts is the justifiable assumption by one party of a certain intention on the part of the other, the undertaking of each promiser in a contract must include any promises which a reasonable person in the position of the promisee would be justified in understanding were included.

"Wherever, therefore, a contract cannot be carried out in the way in which it was obviously expected that it should be carried out without one party or the other performing some act not expressly promised by him, a promise to do that act must be implied."

The question as to whether the language used, taken in connection with the surrounding circumstances, will justify us in saying that appellee impliedly agreed to drill the well on the premises to a depth of 3,500 feet, unless oil or gas was found at a less depth, is one which we admit is quite difficult and one which must be decided upon the facts of this case alone.

It has been said that "precedent can throw but little light upon the sound interpretations of such contracts, especially as to implying unexpressed obligations; each has its own individuality, its own symbols, and at times, even in the most formal agreement, but elliptical expressions of the mutual understanding; the underlying mutual intent, sought by both parties to be clothed in the language used, must be ascertained; text, context, and extrinsic circumstances, including prior negotiations and relations, may be considered to enable the court to view the matter from the standpoint of the parties at the time of making the contract."

Contracts include not only what is expressly stated, but also what is necessarily to be implied from the language used; and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face. In order that an unexpressed term may be implied, the implication must arise from the language employed in the instrument, or be indispensable to effectuate the intention of the parties. 13 C. J. pp. 558, 559, § 521.

We find in the case before us, when we consider the whole record, that the conduct of the parties, the correspondence between them, and the recitals in the supplemental agreements, refute the idea that Loftus was to drill the well, at all events, to any depth.

It seems rather to have been the understanding of the parties that Loftus would drill a well on the premises in case the money necessary, or at least a part thereof, could be furnished by other parties, and the record discloses that both parties to the contract were engaged in trying to induce other parties to purchase parts of the lease in order to secure funds with which to do further drilling on the well.

At least there is so much doubt as to the intention of the parties, in this respect, that we do not feel justified in holding that the court should have read into the contract the implied obligation on the part of Loftus to drill the well to a depth of 3,500 feet, unless oil or gas was found at a less depth, the record being insufficient to show

that such a holding is indispensable to effectuate the intention of the parties.

The first and second assignments are therefore overruled.

■-Assignments 3 and 4 complain of the court's action in excluding certain testimony of the witness Slaughter, as to statements made by Loftus, relative to his intention to complete the well to a depth of 3,500 feet.

Appellant contends that these statements were admissible as admissions against interest. With such contention we do not agree.

It is undisputed that Loftus had agreed with Slaughter & Veale to drill a well to a depth of 3,500 feet or forfeit his lease, and his statement of his intention to resume work on, and complete, the well to the depth provided in the lease, would in no way tend to prove the existence of a contract between him and Roseborough to drill the well to a depth of 3,500 feet. It certainly was not an admission as to any such contract with Roseborough, and we think was irrelevant to that issue.

■ Appellant's fourth and last assignment presents the question of the sufficiency of the evidence to support the jury's verdict in answer to special issue No. 1. He contends that the record taken as a whole leads to the irresistible conclusion that Loftus did make an oral agreement with Roseborough to drill the well to a depth of 3,500 feet, unless oil or gas in paying quantities was found at a less depth.

We have studied the record with care, and have concluded that, while there is a sharp conflict in the evidence, it is sufficient to support the jury's finding, and therefore the finding should not be disturbed.

The judgment of the trial court is affirmed.