## PALM v. MORTGAGE INVESTMENT CO. OF EL PASO.

### No. 4696.

Court of Civil Appeals of Texas. El Paso.
Jan. 25, 1950.

Rehearing Denied March 1, 1950.

Andress, Lipscomb & Peticolas, El Paso, for appellant.

Burges, Scott, Rasberry & Hulse, El Paso, for appellee.

McGILL, Justice.

The controlling question presented by this appeal is whether certain implied covenants should be incorporated in a written lease of property known as 206 Mills Street in the City of El Paso, by appellee as lessor to appellant as lessee. On May 2, 1941, by written lease of that date appellee leased to appellant that certain building known as 206 Mills Street, El Paso, Texas, for a term to commence on June 15, 1941, and to end on September 15, 1947. The lease contained the following provisions:

"2. The rent of said premises shall be a minimum of Fifteen Thousand And No/100 ($15,000.00) Dollars, payable in the following monthly installments in advance on the fifteenth day of each and every calendar month of said term payable in monthly installments, in advance as follows: $200.00 on or before the 15th day of June, 1941, and a like amount on the corresponding day of each and every month thereafter of said term, plus a yearly sum based on six per cent (6%) of the gross sales as hereinafter provided in Paragraph 21a * * *.

"3. Said premises shall be used only for the purpose of a shoe store for retail business and shoe repair shop conducted by Dudley G. Palm and for no other purposes whatsoever."

"18. The Lessee agrees that in the event it becomes necessary for the Lessor to take legal action to enforce the covenants provided to be performed by the Lessee, under the terms of this lease, or in the event it becomes necessary for the Lessor to take legal action to collect any rent or rents due or to become due under the terms of this lease, that he will pay to the Lessor all costs arising in connection with said action, including reasonable attorney's fees; * * *."

"21a. The rental for the premises herein leased, for the full term shall be $15,000.00 or a sum equal to 6% of the total gross sales for the period beginning June 15, 1941, and terminating September 15, 1947, whichever sum is the greater. It is understood and agreed that an accounting will be made annually, the first accounting to be made for the term from June 15, 1941, to December 31, 1941, and thereafter accountings to be made at the end of each year for the period covering from January 1st to December 31st of each of said years, Except for the last accounting, which shall be made on September 15, 1947, for the period from January 1st, 1947, to and including September 15, 1947. On December 31st of the years 1941 to 1946 inclusive and on September 15, 1947, or within fifteen (15) days after said dates lessee shall furnish lessor with a certified statement showing all gross sales for the preceding period of the term of this lease and if 6% of such gross sales exceed the rental for such term at $200.00 per month, Lessee shall pay to Lessor the excess over and above the rental paid at the rate of $200.00 per month, so that lessor shall receive $200.00 per month, or 6% of the gross sales, whichever sum is the greater. Such annual excess payments shall be due within fifteen (15) days after the termination of the term for which they are due. Lessee further agrees on or before March 15th of each year to furnish Lessor with a copy of each annual income tax return to check the certified account previously delivered lessor, if requested by lessor. Lessor may at its option examine or cause to be examined the books of Lessee, in order to check the certified statement, and the annual income tax return. The failure on the part of lessee to furnish such certified statements, and annual income tax returns, or to allow Lessor to audit lessee's books, or to make such annual excess payments, as they become due, shall be considered a breach of this lease and default in the performance of an obligation imposed on lessee."

Appellee as plaintiff in the trial court alleged: "Defendant, in addition to the express covenants of such lease in the light of the circumstances surrounding the dealings of the parties, the subject matter involved and the interest and situation of the parties, impliedly covenanted and bound and obligated himself (1) to so conduct a *show* store for the mutual benefit of the parties as to produce a rental in excess of the minimum rental; (2) to use his best efforts or, in any event, to use reasonable diligence in operating a shoe store and repair shop to obtain the highest volume of business, to the end that such operation would produce for plaintiff a maximum rental; (3) to continue through the term of such lease to operate in good faith from said premises a retail shoe store and repair shop of the same character previously operated and in the same manner as an operator of ordinary prudence would operate the same with due regard to the interests of both plaintiff and defendant; (4) not to curtail or cut down his previous, usual and customary operations from said premises;

and (5) to conduct in good faith his retail shoe store and repair shop business from said Mills Street store to the mutual interest of both plaintiff and defendant, exercising his usual and customary business ability."

Breach of such implied covenants was alleged in that the defendant after plaintiff had advised him that it would desire possession of the leased premises on September 15, 1947, on termination of the lease, acquired a store room at 216 North Stanton Street, El Paso, Texas, with the intention of substantially removing prior to the termination of the lease, and entirely removing at the end thereof his business from the Mills Street store, and on February 19, 1947 that he did establish a store at 216 North Stanton Street and did substantially remove the major portion of his business from the Mills Street store to the Stanton Street store during the unexpired period of the lease. Plaintiff sought to recover 6% of the combined gross sales made from the Mills Street and Stanton Street stores for the period from January 1, 1947, to September 15, 1947, less the sum of $1700 being the minimum $200 per month provided by the lease, which defendant had paid. Defendant denied that any of the implied conditions or covenants alleged by plaintiff were within the contemplation of the parties at the time the lease was made, and alleged that the contract of lease was unambiguous and that the additional terms alleged by plaintiff could not be added to it.

Trial was to the court, and judgment rendered for plaintiff for damages in the sum of $2046.28 with interest from September 15, 1947, amounting to $212.45, and attorneys fees of $500 and costs. Appellant requested the court to file findings of fact and conclusions of law, and in response to such request the court did file elaborate findings and conclusions. We reproduce those findings and conclusions which we deem material:

### Findings.

"(3) I find that some months prior to January 1, 1947, plaintiff advised defendant that it desired possession of the leased premises on September 15, 1947, the termi-nation date of the lease, due to the fact that it had rented the premises to Woolworth's. Thereafter, and on or about the 20th day of November, 1946, defendant leased the premises known as and located at 216 North Stanton Street, El Paso, Texas, for the term beginning January 1, 1947, and on or about February 19, 1947 opened a new retail shoe store at said premises known as 216 N. Stanton Street under substantially the same name. I find that from and after January 1, 1947, defendant materially and substantially curtailed his stock of merchandise and his shoe business, and materially and substantially changed his method and manner of doing business in the leased premises located at 206 Mills Street, El Paso, Texas, in that (1) he removed from the Mills Street location $20,527.76 from his stock of shoes and $761.97 from his stock of hosiery and findings between dates of January 1st and February 19, 1947, and thereafter maintained only a small stock of retail shoes and repair materials amounting to about $9,000.00 in March, $6,000.00 in April, $5,000.00 in August and $1,500.00 on September 1, 1947; (2) after January 1, 1947, and before February 19, 1947, defendant removed from the Mills Street location to the Stanton Street location nine fitting chairs and one of his cash registers and thereafter maintained only nine fitting chairs and one cash register in the Mills Street location; (3) during January and February, 1947, defendant and his employees were necessarily engaged partly in removing merchandise, rearranging the Mills Street store and preparing the new store for occupancy, and the store at the Mills Street location was necessarily upset to some extent in rearranging the same and in removing said fitting chairs and other equipment formerly used in the Mills Street store and from and after February 19th, 1947 defendant maintained in the Mills Street location only six employees of which one, to-wit, Stanley A. Wright, spent only a part of his time at the Mills Street location, and defendant likewise divided his time between the two stores but occupied himself mainly at the Stanton Street store; and (4) by advertising through the newspapers and over the

radio defendant pushed his nationally advertised brands of shoes from the Stanton Street location and accentuated a cheaper or bargain class of shoes at the Mills Street location in which he had installed a bargain counter in lieu of the nine fitting chairs he had removed therefrom, and by changing his window dressings in the Mills Street location, which formerly had showed nationally advertised high priced shoes, he accentuated his shoe repair business and cheaper shoes carried at the Mills Street location. Looking at the evidence as a whole, I find that defendant from and after January 1, 1947 materially and substantially curtailed his usual and customary business operations at the Mills Street store and substantially and materially reduced the facilities previously and during the years prior to January 1, 1947 maintained and afforded at the Mills Street Store, materially and substantially reduced the stock of merchandise carried at such store during the years of the lease preceding January 1, 1947, and substantially and materially changed the character of business conducted in such store during the years preceding January 1, 1947. From the evidence as a whole, I find that defendant from and after January 1, 1947 failed to carry on and conduct his retail shoe store and repair shop in the Mills Street store in the manner in which he had operated the same prior to January 1, 1947, with due regard to the interest of both plaintiff and defendant. I also find that the curtailment mentioned and the changes so made as in this paragraph detailed caused the reduction in gross sales from the Mills Street store for the period from January 1, 1947 to September 15, 1947 as reflected by the books of the defendant and resulted in plaintiff's failure to receive any rental for this period in excess of the minimum rental provided for by such lease. I further find that the changes made in defendant's business and the curtailment of his said business operations as herein detailed were not, at the time made, necessary to protect defendant in the operation of his business and were not what a reasonably prudent man would have done under the same circumstances,

having due regard to the interest of plaintiff lessor and defendant lessee.

"(4) I find that defendant from and after January 1, 1947 to and including June 15, 1947 failed to operate and conduct in good faith a retail shoe store and repair shop in the leased premises on Mills Street in a manner that could reasonably be expected of a person of ordinary prudence having due regard to the interests of plaintiff lessor and defendant lessee.

"(5) I find that an operator of ordinary prudence would have operated from said leased premises during that part of the last partial year thereof, beginning January 1, 1947 to and including June 15, 1947, a retail shoe store and repair shop of substantially the same size, kind and character and in substantially the same manner as defendant had operated his said retail shoe store and repair shop from said premises during the preceding year 1946."

"(10) Plaintiff's rental depended upon the amount of business done by the defendant in the leased premises and I find as a fact from the evidence as a whole that the parties contemplated that defendant during each year of the lease would operate the same in substantially the same manner as operated during the preceding annual period of the lease."

### Conclusions.

"(1) Defendant, the lessee in the lease contract sued upon herein, became and was during each year of the term of said lease impliedly bound and obligated to conduct and maintain in the leased premises in good faith a retail shoe store and shoe repair business of substantially the same size and character as he had maintained and conducted therein in prior years and such obligation continued for each separate year of said lease, including the partial year from January 1, 1947 to September 15, 1947. It is necessary to imply such obligation in order to effect the purposes of the parties to such lease contract.

"(2) Defendant lessee in the lease contract sued upon herein became and was bound and obligated to maintain and conduct in good faith in and from the leased

premises a retail shoe store and repair shop of the same size, kind and character as an operator of ordinary prudence would have maintained and conducted and could have been reasonably expected to maintain and conduct in and from the same during the same period, with due regard to the interest of both plaintiff lessor and defendant lessee, and such implied obligation continued for each separate year of said lease, including the partial year from January 1, 1947 to September 15, 1947. It is necessary to imply such obligation in order that the purposes of the parties to the lease contract might be effected."

The general rule governing covenants which will be implied in a written instrument was thus stated by the Supreme Court in Danciger Oil & Refining Co. of Texas v. Powell, 137 Tex. 484, 154 S.W. 2d 632, loc.cit. 635 (1-4), 137 A.L.R. 408: "In the outset it should be noted that when parties reduce their agreements to writing, the written instrument is presumed to embody their entire contract, and the court should not read into the instrument additional provisions unless this be necessary in order to effectuate the intention of the parties as disclosed by the contract as a whole. An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so, or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument. It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument as a whole. 21 C.J.S., Covenants, § 9, p. 888; 13 C.J. 558; 17 C.J.S.Contracts, § 328; 15 C.J. 1214; 21 C.J.S.Covenants, § 14; 14 Am.Jur. 490; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex.

439, 6 S.W.2d 1039, 60 A.L.R. 890; Grass v. Big Creek Development Co., 75 W.Va. 719, 84 SE 750, L.R.A. 1915E, 1057. However, covenants will be implied in fact when necessary to give effect to the actual intention of the parties as reflected by the contract or conveyance as construed in its entirety in the light of the circumstances under which it was made and the purposes sought to be accomplished thereby. See Property Interest Created by Lease, by A. W. Walker, Jr., Professor of Law, University of Texas, 11 Texas Law Review 402."

Under this rule and the facts found by the court we think no such obligations on the part of the lessee as the court concluded were necessary to effect the purpose of the parties can be implied. The record does not reveal the terms under which appellant had occupied the property at 206 Mills Street if he did occupy it at all prior to his occupancy under the lease beginning June 15, 1941. There is no showing that appellee knew the amount of appellant's gross sales or had any information as to the amount of such gross sales prior to the signing of the lease. In the absence of any showing it is reasonable to suppose that appellant was willing to pay a minimum of $200 per month rent and a bonus amounting to 6% of the gross sales if in excess of such sum, and that appellee was willing to accept such terms without any implications as to the character of shoe store that the lessee would maintain. Indeed, since the only provision of the lease relating to the use of the leased property is that it should be used "only for the purpose of a shoe store for retail business and shoe repair shop" it may be questioned whether there was any implied obligation on the part of lessee to occupy the premises at all. See Annotation 46 A.L.R. 1134. Also, the purpose for which the premises should be used having been specified as above, and there being no question but that such use was made of such premises during the entire term of the lease, an implication which would require the lessee to conduct a retail shoe store and shoe repair business of substantially the same size and character as he had maintained and con-

ducted therein in prior years (it not appearing what character of store, if any, he had maintained and conducted on the leased premises prior to the term of the lease); or an implication which would require the lessee to maintain and conduct a shoe store and repair shop of the same size, kind and character as an operator of ordinary prudence would have maintained and conducted and could have been reasonably expected to maintain and conduct with due regard to the interest of both lessor and lessee would enlarge the express terms of the contract in violation of the above quoted rule. Furthermore, such implications would require conduct on the part of lessee so vague, indefinite and uncertain that he could not determine his obligation under the contract and would violate that portion of the above quoted rule which requires that the implied covenant should be of contemplated conduct so clearly within the contemplation of the parties that they deemed it unnecessary to express it. Under the rule a covenant which requires conduct which the parties themselves cannot define with certainty will not be implied.

The case of Marvin Drug Co. v. Couch, Tex.Civ.App., 134 S.W.2d 356, Wr.Dis. Judg.Correct, on which appellee strongly relies is distinguishable. There the premises which were the subject of the lease had been occupied by the lessor as a drugstore prior to the execution of the lease and the amount of gross cash received from sales and money collected on accounts or business done from the premises in the past was undoubtedly known to the parties at the time the lease was signed; also no minimum rental being provided the lessor was entirely dependent on the amount of gross cash receipts from sales and collections for any rent, and it was shown that there was a custom in the vicinity as to the hours drugstores were opened and closed, and that such custom had been observed by the lessor before the lease was signed and was observed by him as the lessee's manager for some time after the lease was signed. None of these facts or circumstances are present in this case.

If the court's finding of fact (10) above quoted be construed as a finding that at the time the parties signed the lease it was contemplated that the lessee during each year of the lease would operate the business in substantially the same manner as operated during the preceding annual period of lease, then such finding is entirely without evidence to support it. Of course at the time the lease was signed there could be no knowledge on the part of either party to it as to the character of business which would be operated during the year of the lease, the lease making no provision in this respect. The parties could hardly have contemplated at the time the lease was signed that the lessee would operate each year substantially the same as he operated during the preceding year, when at such time he had not operated at all during any preceding year. If on the other hand the finding be construed to mean that after appellant began his operations under the lease it was contemplated by the parties that he should operate each year in substantially the same manner as he operated during the preceding year of the lease, then such finding is immaterial.

The case of Selber Bros. v. Newstadt's Shoe Store, 194 La. 654, 194 So. 579, Id., 203 La. 316, 14 So.2d 10, cited by appellee is also distinguishable because in that case the lease in question was a renewal lease and at the time it was signed the parties knew that 6% of the gross sales for a long period had averaged $400 per month, which was double the minimum rent provided by the lease. A well considered case which supports our views on facts similar to those here presented is Cousins Investment Co. v. Hastings Clothing Co., 45 Cal.App.2d 141, 113 P.2d 878. In this case the court quotes from Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890, and from Jenkins v. Rose's 5, 10 and 25¢ Stores, 213 N.C. 606, 197 S.E. 174, 175, a case which we deem very much in point.

It is our conclusion that under the terms of the written lease of May 2, 1941, and the facts and circumstances surrounding its execution as reflected by the trial court's findings, appellant fully complied with the terms of such lease when he paid appellee his minimum rental of $200 per month

therein provided for the period from January 1, 1947 to the expiration of the lease on September 15, 1947. Therefore the judgment of the trial court is reversed and judgment here rendered that appellee recover nothing from appellant and that all costs in this court and in the trial court be taxed against appellee.

Reversed and rendered.