**LILAC VARIETY, INC., et al., Appellants,**

v.

**DALLAS TEXAS COMPANY et al.,**

Appellees.

No. 16408.

Court of Civil Appeals of Texas.

Dallas.

Sept. 25, 1964.

Rehearing Denied Oct. 23, 1964.

**194**

Locke, Purnell, Boren, Laney & Neely and Larry M. Lesh, Dallas, for appellants.

Goldberg, Fonville, Gump, Strauss & Hauer, Dallas, for appellee.

DIXON, Chief Justice.

Lilac Variety, Inc. and T G & Y Stores, a Corporation, have appealed from a summary judgment in favor of Dallas Texas Company, a Corporation. By its judgment the court in effect construed a lease contract so as to hold that under the undisputed facts appellants were not entitled to cancellation of the agreement. Both sides had filed motions for summary judgment.

On May 12, 1958 Holaday Development Company, owners and developers of a suburban shopping center, entered into a lease agreement covering a period of 15 years with T G & Y Stores whereby the latter company leased premises for the operation of a retail store. The present controversy revolves around the interpretation to be given to the provisions of the fourth section of the contract. Material portions of said section are as follows:

"CONSTRUCTION. 4 It is further understood and agreed that the Lessor shall at its sole expense furnish, install and construct the leased premises and the shopping center in accordance with the plans, Exhibit 'A'; specifications, Exhibit 'B'; and plat plan, Exhibit 'C'; attached hereto and made a part of this contract.

"It is further understood and agreed * * * that Eighty (80%) percent of the completed building area shall be occupied by reputable tenants, and they shall be doing business within one hundred twenty (120) days from the time of Lessee's opening for business, and said tenants shall include:

"Supermarket—A.C.F. Wrigley Stores
"Department Store—W. T. Grant Co.
"Drug Store—Ward Drugs
"Auto Supply—Western Auto Supply Co.

"It is the agreement and understanding of the parties hereto that all buildings shown on Exhibit 'C' shall be and remain in existence at all times during the term of this lease or any extension thereof, and that the supermarket, department store, and other major tenants shall remain as tenants and located as per proposed location on Exhibit 'C' at all times during the term of this lease or any extension thereof.

"In the event Lessor fails to comply with any of the above provisions, Lessee shall give immediate written notice of such default to Lessor, and in the event that Lessor fails to cure said default within sixty (60) days from the date of such written notice, the Lessee, at its option, may cancel this lease."

On September 6, 1958 T G & Y Stores subleased the premises to appellant Lilac Variety, Inc. which company thereafter began operation of a retail store. Within the 120-day period specified in the lease A.C. F. Wrigley Stores, having leased adjoining premises, opened and began operation of a supermarket.

Shortly prior to April 26, 1962 A.C.F. Wrigley Stores closed the doors to its leased premises and discontinued operation of its supermarket. The said premises have since remained vacant except for use by A.C.F. Wrigley Stores for storage of the fixtures formerly used by the company in the operation of its supermarket.

On May 3, 1962 appellants by letter notified Holaday Development Company, Inc.

that A.C.F. Wrigley Stores had discontinued operation of its supermarket and that Holaday was therefore in default of the fourth section of the lease with appellants. The letter was sent in compliance with the sixty-day notice required by the lease.

On August 27, 1962 Holaday by letter informed appellants that on August 15, 1962 Holaday had sold the entire shopping center to Dallas Texas Company, and all existing leases had been assigned to Dallas Texas Company.

On August 30, 1962 appellants notified George S. Klein, agent for Dallas Texas Company, of the alleged default in their lease agreement, enclosing a copy of their letter of May 13, 1962 to Holaday.

An exchange of correspondence subsequently took place between appellants and George S. Klein Company. Klein stated that every effort was being made to obtain a suitable supermarket for the location; and expressed the hope that appellants would continue to operate their store. In reply appellants reiterated their claim of default, but said that if Klein should secure "as a tenant a supermarket which would be an acceptable substitute," they would be willing to consider waiving the requirement as to A.C.F. Wrigley Stores.

It is apparent from the record that no such substitute supermarket was obtained by Klein. The premises formerly used by A.C.F. Wrigley Stores for the operation of a supermarket remained vacant except for use for storage of the supermarket fixtures. Appellants submitted to Dallas Texas Company an instrument cancelling the lease, but appellees refused to sign said instrument or to cancel appellants' lease.

Evidently A.C.F. Wrigley Stores is still bound by the terms of its lease agreement, for Wrigley has continued to pay its rent under its lease contract notwithstanding the fact that it discontinued operation of its supermarket some time prior to April 26, 1962.

This suit was filed by appellants April 4, 1963. Appellants pray for a declaratory judgment decreeing that "said lease is cancelled and of no further force and effect." American National Insurance Company, holder of a mortgage against the shopping center, was also made a party defendant, but it filed a disclaimer and is not involved in this appeal.

## OPINION

In two points on appeal appellants attack the court's action in overruling their motion for summary judgment and in sustaining that of appellee. In two counterpoints appellees defend the court's action.

The parties agree that the lease contract in question is unambiguous, yet they disagree as to its meaning. Appellants say it means that a supermarket operated by A.C.F. Wrigley Stores shall remain in existence in the shopping center throughout the term of the lease. Appellee, on the other hand, says that the lease means merely that A.C.F. Wrigley Stores shall remain as a tenant without necessarily continuing to operate a supermarket.

We agree with appellants. In our opinion the language of the lease permits of no other interpretation. It provides that the area shall be occupied by reputable tenants who shall be *"doing business"* within 120 days from the time of lessee's opening for business, and that said tenants shall include *"Supermarket* A.C.F. Wrigley Stores". We think the next paragraph is especially significant, for it expressly and explicitly provides that "the *supermarket,* department store and other major tenants shall remain as tenants *and located as per proposed location on Exhibit C at all times during the term of the lease * * *"* (Emphasis supplied).

A cardinal rule in the interpretation of contracts not alleged to be ambiguous is to ascertain and give effect to the intention of the parties as revealed by the language used in the contract itself. Furthermore the court will view the agreement as of the time it was made. Ervay, Inc. v. Wood, Tex.Civ.App., 373 S.W.2d 380;

Richker v. Georgandis, Tex.Civ.App., 323 S.W.2d 90, 98; Orr v. Vandygriff, Tex.Civ. App., 251 S.W.2d 573, 574. The words used in the contract will be given their ordinary and accepted meaning. J. R. Gray Company v. Jacobs, Tex.Civ.App., 362 S.W. 2d 167, 171; Dilger v. Dilger, Tex.Civ.App., 271 S.W.2d 169, 172; Pardo v. Southampton Civic Club, Tex.Civ.App., 239 S.W.2d 141, 143, 149.

■ Webster's New World Dictionary defines supermarket as "A large food store or market in which shoppers serve themselves from open shelves, and pay for their purchases at the exit." See also Rosen v. Pustilnik, Sup., 204 N.Y.S.2d 222, 223.

■ In 55 C.J.S. p. 784 it is said that the "term 'market' conveys the idea of selling, and it assumes the existence of trade and implies competition, and also implies the existence of supply and demand, for, without the existence of either factor, no market is shown." See also State v. Penniman, 224 La. 95, 68 So.2d 770, 773; Sitzes v. Raidt, 335 S.W.2d 690, 699 (Mo.App.); Mottolla v. United States, D.C., 149 F. Supp. 189, 194.

■ We think it is common knowledge that the volume of pedestrian traffic at the site of a retail merchandising business is a factor which affects the gross sales potential of the business. That being so the purpose and the importance to appellants of the lease provisions with reference to a supermarket are obvious. Plainly the parties intended that a supermarket should be in operation during the term of the lease. We find it impossible to believe that when the parties entered into this lease agreement it was intended that the particular lease provision in question would be satisfied if A.C.F. Wrigley Stores should continue to pay rent on an idle store building after discontinuing operation of the supermarket.

■ It is true, as appellee says, the lease contract does not in exact words stipulate that A.C.F. Wrigley Stores will not discontinue operation of the supermarket during the term of the lease, but we believe such a provision is necessarily implied from the plain language of the agreement.

■ Our Supreme Court has said, "A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used; and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face." Freeport Sulphur Co. v. American Sulphur Royalty Co. of Texas, 117 Tex. 439, 6 S.W.2d 1039, 1042, 60 A. L.R. 890. See also Roseborough v. Loftus, Tex.Civ.App., 13 S.W.2d 950, 952 and Marvin Drug Co. v. Couch, Tex.Civ.App., 134 S.W.2d 356, 361.

Appellee argues that if we imply an agreement for the continuing operation of a supermarket, we would also have to imply the terms of the agreement in respect to hours of operation, number of employees and amount of inventory, as well as whether temporary cessation of operation would be allowed for holidays, remodeling, restocking, etc., and if so, the permissible length of such temporary cessations.

We see no merit in appellee's argument as above stated. We are not confronted by any issues pertaining to temporary cessation. The only question before us is whether the total and permanent discontinuance of the operation of the supermarket entitles appellants to a cancellation of their lease contract. We think it does.

Appellants' two points on appeal are sustained.

■ Ordinarily when a summary judgment is reversed on appeal the cause is remanded to the trial court for trial on the merits. However, our Supreme Court has held that when both parties file motions for summary judgment and one such motion is granted, the Court of Civil Appeals should determine all questions presented. If reversible error is found the court should render such judgment as the trial court

should have rendered. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 400; see also Rule 434 Texas Rules Civil Procedure.

We therefore reverse the judgment in this case and render judgment in favor of appellants decreeing that the lease agreement is cancelled.

Reversed and rendered