Taco Bell 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00166-CV







Alan Nalle, Appellant



v.



Taco Bell Corp. and Austaco, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 93-05492, HONORABLE PETER M. LOWRY, JUDGE PRESIDING







 Appellant Alan Nalle leased property to appellee Taco Bell Corporation for use in
the operation of a Taco Bell restaurant franchise held by appellee Austaco, Inc. When Austaco
ceased operating the restaurant and began using Nalle's property as a storage facility, Nalle sued
Taco Bell and Austaco in district court for breach of the lease. The district court granted
summary judgment in favor of both appellees, and Nalle now appeals. We will affirm the
judgment of the district court.



THE CONTROVERSY


 In 1976, Jim Ray leased the premises in question, located at 9600 North Lamar in
Austin, to Taco Bell. Taco Bell subleased the premises to Austaco, which held a franchise to
operate a Taco Bell restaurant at that location. Nalle is Ray's successor-in-interest, having bought
the premises in 1989.

 The lease has a fixed twenty-year term and provides that Taco Bell "may use the
demised premises for the purpose of conducting thereon the business of a TACO BELL retain
(sic) food outlet and for incidental purposes related thereto, or for any other legally permissible
business or commercial venture as shall be provided by Lessor in writing." As compensation to
Nalle, Taco Bell must pay monthly the higher of two figures: a fixed sum of $1350 or five percent
(5%) of the restaurant's gross sales. Taco Bell has the obligation to pay all taxes, insurance, and
repairs on the premises.

 Austaco operated a Taco Bell restaurant on the property from the inception of the
lease until April 1993, at which time it closed the restaurant and began using the property as an
equipment storage facility. In addition, Austaco began operating a new Taco Bell restaurant
located approximately one block from Nalle's property. Before Austaco closed the restaurant in
1993, gross sales had always yielded monthly payments to Ray and Nalle of an amount in excess
of the $1350 base rent. After closing the restaurant, Austaco tendered only the base rent because
the property no longer generated sales income.

 Aggrieved by the loss of percentage rentals, Nalle filed suit in district court,
alleging that Taco Bell (1) had breached the lease. Taco Bell moved for summary judgment, arguing
that the lease did not require it to continue operating the premises as a restaurant so Nalle would
receive percentage rentals in an amount above the $1350 base rent. Nalle responded with two
alternative arguments: (1) the lease expressly required Taco Bell to continue operating a restaurant
on the premises, or (2) the lease contained an implied covenant that Taco Bell would do so. The
trial court granted summary judgment for Taco Bell, holding that the lease did not expressly or
impliedly require Taco Bell to continue operation of the restaurant on the premises. Nalle now
appeals.



DISCUSSION


 Nalle first argues that the lease expressly requires Taco Bell to continue operating
a restaurant on the leased premises. Taco Bell argues that the lease provision simply permits it
to operate the restaurant, but does not require it to do so. We agree with Taco Bell. The meaning
of language used in a contract is a question of law. Birdwell v. Ferrell, 746 S.W.2d 338, 339
(Tex. App.--Austin 1988, no writ). The lease provides that Taco Bell "may use" the premises for
operating a Taco Bell restaurant. The word "may" means possibility, permission, liberty, or
power; it does not indicate a mandatory requirement. Black's Law Dictionary 979 (6th ed. 1990). 
Nalle asks us to read the lease as though it provided that Taco Bell "must" use the premises to
operate a restaurant. We decline to do so. We interpret a word in a contract according to its
usual grammatical meaning unless it clearly appears that the parties intended otherwise. Reilly
v. Rangers Management, Inc., 727 S.W.2d 527, 529 (Tex. 1987); Birdwell, 746 S.W.2d at 340. 
The record does not clearly demonstrate that the parties meant "must" when they used the word
"may" in the lease. Therefore, we adhere to the plain language of the lease and hold that it does
not expressly require Taco Bell to continue operation of a restaurant on the leased property. See
Weil v. Ann Lewis Shops, Inc., 281 S.W.2d 651, 654 (Tex. Civ. App.--San Antonio 1955, writ
ref'd) (similar clause held not to create express obligation that lessee must begin or continue doing
business).

 Nalle's second and primary argument is that the trial court erred in interpreting the
lease by failing to imply a "covenant of continuous operation" obligating Taco Bell to operate a
restaurant on the premises throughout the lease period. (2) Taco Bell responds that courts imply
covenants only in rare circumstances not applicable here. We agree with Taco Bell that, as a
matter of law, an implied covenant of continuous operation is improper on the record before us.

 Texas law does not favor implied covenants. Atlantic Richfield Co. v. Exxon
Corp., 663 S.W.2d 858, 870 (Tex. App.--Houston [14th Dist.] 1983), rev'd on other grounds, 678
S.W.2d 944 (Tex. 1984). As a general rule, we look only to the written contract to discern the
obligations of the contracting parties. Sun Oil Co. v. Madeley, 626 S.W.2d 726, 728 (Tex. 1981);
Danciger Oil & Ref. Co. v. Powell, 154 S.W.2d 632, 635 (Tex. 1941). We will look beyond the
written agreement and imply a covenant only if it is "necessary in order to effectuate the intention
of the parties as disclosed by the contract as a whole." Danciger, 154 S.W.2d at 635. An implied
covenant is sufficiently necessary to the parties' intentions only if the obligation "was so clearly
within the contemplation of the parties that they deemed it unnecessary to express it . . . ." Id. 
We will not imply a covenant simply because it is needed to make the contract fair, wise, or just. 
Id.; Weil, 281 S.W.2d at 655.

 We find the holding in Weil v. Ann Lewis Shops, Inc., 281 S.W.2d 651 (Tex. Civ.
App.--San Antonio 1955, writ ref'd), persuasive and applicable to the case at bar. In Weil, the
court construed a lease, very similar to the one in the instant appeal, that provided for a monthly
payment to lessor of $650 or 5% of gross sales from the business, whichever was greater. The
lessee corporation never began conducting business on the leased premises and tendered only the
fixed rent; the lessor then sued, arguing that the lessee was bound by an implied covenant to
conduct the business contemplated in the lease throughout the entire term of the agreement. Id.
at 653-54. The San Antonio court held that the existence of the fixed rental clause prevented the
implication of a covenant of continuous operation because the lease had been extensively
negotiated and the fixed rent served as reasonable protection for the lessor in case the lessee failed
to conduct a certain level of business. The court refused, as a matter of law, to imply the
covenant because it was not plainly necessary to effectuate the intent of the parties nor obviously
within their contemplation. Id. at 655-56. The supreme court refused writ in Weil, indicating that
the opinion was correct and that we must accord it the binding precedential value of a supreme
court case. Tex. R. App. P. 133(a); `21' Int'l Holdings, Inc. v. Westinghouse Elec. Corp., 856
S.W.2d 479, 483 (Tex. App.--San Antonio 1993, no writ); Ohler v. Trinity Portland Cement Co.,
181 S.W.2d 120, 123 (Tex. Civ. App.--Galveston 1944, no writ).

 Nalle argues that Weil is distinguishable because the lessee never began doing
business on the leased premises, whereas in this appeal Taco Bell conducted business for many
years. We find the distinction unpersuasive because it was not important to the Weil court's
rationale. The Weil court based its holding not on the specific nature of the obligation that the
lessee sought to imply, i.e. to begin and continue conducting business, but rather on the absence
of any indication that such an obligation was clearly within the contemplation of the parties: 



The contract was well written and quite lengthy. It seems to cover the parties'
entire understanding. It is plain and unambiguous, and we see no reason to write
into this contract a stipulation which the parties themselves did not see fit to place
therein . . . .



Weil, 281 S.W.2d at 656. Our analysis is supported by the rule that the decision whether to imply
a covenant of continuous operation must be evaluated at the time the parties signed the lease
agreement. See Danciger, 154 S.W.2d at 635; Palm v. Mortgage Inv. Co., 229 S.W.2d 869, 874
(Tex. Civ. App.--El Paso 1950, writ ref'd n.r.e.). Subsequent transactions between the leasing
parties, such as the failure to occupy in Weil, are therefore irrelevant to our implied covenant
analysis. We hold that the rationale in Weil applies to this appeal and is controlling precedent.

 In support of his position, Nalle offers two opinions in which Texas appellate courts
held that commercial lessees breached their leases by ceasing or scaling-back business operations. 
See Lilac Variety, Inc. v. Dallas Tex. Co., 383 S.W.2d 193, 195 (Tex. Civ. App.--Dallas 1964,
writ ref'd n.r.e); Marvin Drug Co. v. Couch, 134 S.W.2d 356, 361 (Tex. Civ. App.--Dallas 1939,
writ dism'd judgm't cor.). We find both cases distinguishable. In Lilac Variety, the lease
expressly required that certain specific tenants be "doing business" throughout the lease term. 
Because the court found the express language of the lease controlling, it did not address the
existence of an implied covenant, which is the relevant issue in this appeal. Lilac Variety, 383
S.W.2d at 194-96. The Marvin Drug court did imply a covenant of continuous operation, but the
lease at issue provided that the lessor would receive only a percentage of gross sales but no fixed
rent. The court held that it was proper to imply a covenant of continuous operation because the
lessor's rental depended entirely upon gross sales. Marvin Drug, 134 S.W.2d at 358. The court
reasoned that the parties clearly intended the lessor to receive compensation and, because the
lessor would only be compensated from the proceeds of gross sales, the lessee was required to
generate such sales to provide the required compensation. Marvin Drug does not apply to this
appeal because Nalle receives $1350 in fixed monthly rent. Taco Bell need not continue doing
business to satisfy its clear obligation to compensate Nalle because Nalle is compensated even
when Taco Bell does no business.

 Finally, appellant relies upon an opinion from the California Supreme Court for
the proposition that a commercial lease with an "inadequate or insubstantial" fixed rent contains
an implied covenant of continuous operation because it is analogous to a lease with no fixed rent. 
See Lippman v. Sears, Roebuck & Co., 280 P.2d 775, 780-81 (Cal. 1955) ("Lippman II"). Nalle
maintains that his lease did not provide an "adequate" minimum rental and therefore contains an
implied covenant of continuous operation. Although Marvin Drug established that Texas law
implies a covenant of continuous operation if a lease contains no fixed rental, the question whether
a lease with an "inadequate" fixed rental also contains such a covenant is one of first impression
in this state. The Weil court did not address this issue, though it quoted from an earlier opinion
in Lippman that the California Supreme Court subsequently vacated after reconsidering the
adequacy issue and delivering the opinion in Lippman II. See Weil, 281 S.W.2d at 655-56
(quoting Lippman v. Sears, Roebuck & Co., 271 P.2d 891, 897 (Cal. 1954), vacated by Lippman
II).

 In this appeal, we find it unnecessary to decide whether Texas subscribes to the
California "adequacy" rule. The record before us demonstrates that the fixed rent in the lease was
substantial and adequate as a matter of law. Jim Ray, the original lessor and Nalle's predecessor
in interest, stated in an affidavit submitted by Nalle that the minimum rent covered his financing
obligations. In addition, the lease obligated Taco Bell to pay taxes, insurance, repairs, and upkeep
expenses. Evaluated at the time the lease was signed, this fixed rent was sufficiently adequate and
substantial to prevent the implication of a covenant of continuous operation. Therefore, even if
Texas were to follow the California adequacy rule, it would not apply to the lease at issue here. 

 We hold that the trial court properly refused to imply a covenant of continuous
operation into the lease, making summary judgment in favor of Taco Bell appropriate as a matter
of law. (3)



CONCLUSION


 Because the lease at issue does not contain an express or implied obligation that
Taco Bell must continue to operate a restaurant on the leased premises, we affirm the trial court's
summary judgment.

 



 


 Mack Kidd, Justice


Before Justices Powers, Aboussie and Kidd


Affirmed


Filed: January 17, 1996


Publish



















1.   For the sake of convenience, we will hereinafter refer to appellees collectively as "Taco
Bell."
2.   In his brief to this Court, Nalle also argues that additional implied covenants may be
read into the lease, e.g. an implied covenant not to divert rental profits from the lessor. In his
pleadings and response to Taco Bell's motion for summary judgment in the trial court,
however, Nalle raised only the implied covenant of continuous operation. Therefore, Nalle
has waived appellate consideration of other implied covenants as grounds for reversal of the
summary judgment. Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court
by written motion, answer or other response shall not be considered on appeal as grounds for
reversal."); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979)
(Non-movant need not respond to motion for summary judgment to challenge the adequacy of
movant's grounds, but any additional or different grounds for avoiding summary judgment will
be waived if not presented in a response).
3.   Nalle also brings two points of error challenging the trial court's summary judgment that
Nalle wrongfully terminated the lease. In its summary judgment order, however, the trial
court expressly severed the wrongful termination issue and placed it under a new cause
number to make the judgment in the instant cause final and appealable. Therefore, we do not
have jurisdiction to consider the wrongful termination issue in this appeal because Nalle has
not appealed from a final judgment disposing of that issue. See Tex. Civ. Prac. & Rem. Code
Ann. § 51.012 (West 1986) (appeal must be taken from final judgment); Mafrige v. Ross, 866
S.W.2d 590, 591 (Tex. 1993) (an appealable, final judgment must dispose of all parties and
issues before the trial court).


M>, 281 S.W.2d at 655-56
(quoting Lippman v. Sears, Roebuck & Co., 271 P.2d 891, 897 (Cal. 1954), vacated by Lippman
II).

 In this appeal, we find it unnecess