McCormick v. Stephany.

---

VIOLA McCORMICK

v.

LOUISE STEPHANY et al.

[Filed November 30th, 1898.]

57    257
s61   210
 61   211
s61   213
s61   217

1. Where, in drawing a contract, an omission of a term intended to be inserted, is made by mistake, the omission may be set up as a defence in a suit for specific performance.

2. But the utmost effect the proof of the mistake can have, is to require the court to consider the contract as if the omitted words had been inserted in their proper place.

3. A covenant in a lease, not to use or permit the demised premises to be used for any other purpose than for a saloon, &c., is not broken by ceasing to use it for the purpose of a saloon, provided it is not used for any other purpose.

4. An option to purchase demised premises, which is one of the clauses in a lease under seal, is not a unilateral contract, nor is it without consideration.

5. Such an option is a conditional contract, which, when exercised in a manner showing performance of the conditions prescribed, may be enforced in equity.

McCormick v. Stephany.

6. The residue of the term of an unexpired lease for years, is a chattel, and goes to the executors or administrators, and not to the heir.

7. A privilege to renew, and an unexercised option to purchase, contained in a lease for years, are also chattel interests, and go primarily to the executor of the lessee, and afterwards to his legatee, and not to the heir.

8. A bill to enforce a conveyance under the exercise of an option, after the death of thé proposed vendee, should be filed by the executor of his will or by his legatee, and if by the latter, should show the executor's assent, &c.

9. Under an agreement made by a married man that his lessee may, upon certain terms named, buy the demised premises, this court will not, at the instance either of the lessee or his representative, decree a conveyance of the dower right of the lessor's wife, whether inchoate or complete.

On bill for injunction, &c., affidavits, &c., and order to show cause, &c.

August Stephany was in his lifetime the owner of a saloon property in Atlantic City, known as the "Extra Dry." By a written lease under seal of both parties, dated June, 1897, he demised this property to one George McCormick, who entered into possession. There were in the lease, covenants not to assign, nor underlet, nor to use for any other purpose than a saloon and dwelling, &c., with a further agreement in these words:

"And it is further agreed by and between the above parties that in case the said party of the first part should find a purchaser for the said premises, then the said party of the second part shall have the option, during the continuance of this lease, to buy of the said party of the first part the said premises for the sum of twelve thousand dollars; and that in case the said party of the first part has found a purchaser for the said premises, the said party of the second part should refuse to buy the said premises at the price above mentioned, then the said party of the second part promises and agrees, upon three months' notice in writing, to quit and yield up the possession of the said premises to the said party of the first part on the first day of June next following the expiration of the said three months' notice."

In October, 1897, McCormick, the lessor, died testate, making his wife, the complainant, sole devisee and legatee for life of his estate, with full power of disposition, and a limitation over to others upon his wife's death. He further directed that upon his death the business that he was carrying on in Atlantic City

should be discontinued and wound up by his executors. He appointed his wife and Mr. Stephany, executors. Shortly after Mr. McCormick's death, Mr. Stephany, by his attorney, served a notice upon Mrs. McCormick claiming that the lease had become null and void, because, as he insisted, the direction in McCormick's will to discontinue the business was a breach of the covenant not to use the premises for any other purpose than a saloon, &c., and, for this reason, Mr. Stephany demanded possession of the premises.

The complainant, Mrs. McCormick, on the other hand, contends that Mr. Stephany, in a transaction looking to a sale of the premises, had "found a purchaser" in one Haines, under the terms of the option in the lease above quoted, and that this gave her a right to tender Mr. Stephany the $12,000 purchase-money and have him convey the premises to her under the above-quoted terms made in the lease. She alleges that she did make such a tender, accompanied by a written notice, a copy whereof is annexed to her bill, in which she denied any breach of the lease, and notified Mr. Stephany that she exercised the option to purchase the property for $12,000, and states "that this sum will be paid upon execution and tender of deed with full covenants." On May 18th, 1898, a like tender was made demanding a "deed of conveyance with full covenants, free of all encumbrances." These demands were refused upon the ground that the complainant was not entitled to any conveyance. In June, 1898, Mr. Stephany demanded payment of the rent, with notice to quit within three days, &c., and, for want of such payment, levied a distress warrant.

The complainant then filed her bill in this court, seeking to restrain the prosecution of the collection of the rent and to specifically enforce the agreement of sale. Almost immediately upon the filing of the bill, Mr. Stephany died intestate, leaving him surviving the defendants, his widow, Louise Stephany, and his children and heirs-at-law, Robert E. Stephany, William Stephany, Albert Stephany, Minnie and Ida Stephany, the last three of whom are minors. The widow, Louise Stephany, took out letters of administration upon the estate of the decedent.

The complainant, in July, 1898, upon Mr. Stephany's death, filed a new bill against the widow and heirs, tendering herself ready to pay the $12,000, and praying answer from the widow and heirs-at-law without oath, and that the defendants may be decreed specifically to perform the agreement upon payment to them of the $12,000 purchase-money, and that meanwhile they may be restrained from proceeding with the distraint, or to interfere with the property or possession of the demised premises by the complainant. On filing the bill and affidavits annexed, an order to show cause was allowed why an injunction should not issue according to the prayer of the bill.

On the coming in of the order, the defendants' filed affidavits stating that Mr. Stephany, prior to making the above-quoted lease, had entered into a previous lease for the same premises, containing the following provisions:

"And it is further agreed by and between the above parties that in case the said party of the first part should find a purchaser for the said premises, then the said party of the second part shall have the option, during the continuance of this lease, to buy of the said party of the first part the said premises for the sum of twelve thousand dollars; and that in case the said party of the second part, *on receiving notice that the said party of the first* part has found a purchaser for the said premises, should refuse to buy the said premises at the price above mentioned, then the said party of the second part promises and agrees, upon three months' notice, to quit and yield up the possession of the said premises to the said party of the first part on the first day of June next following the expiration of the said three months' notice,"

and that looking to the making of the lease of June 1st, 1897, McCormick and Stephany had agreed that the same provision concerning the sale of the premises should be inserted in the lease of June 1st, 1897; that the previous lease was handed to a stenographer for the purpose of copying the option provision, and that in making the copy the stenographer mistakenly omitted from the new lease that line in the old one which is above given in italics; that the parties never in fact agreed for an option upon the terms stated in the lease of June 1st, 1897, if that option is to be construed as vesting in the lessee a right to buy the property at the price named in case the lessor should find a purchaser. The stenographer who wrote the lease testifies

McCormick v. Stephany.

that he was instructed to insert the omitted words and by mistake left them out.

The defendants' affidavits further state that Mr. Stephany never sold or conveyed the demised premises to Haines or to anyone else, but on the contrary continued seized of them at the time of his death; that no notice was ever given the McCormicks by Stephany that he had found a purchaser according to the terms of the lease.

The widow of Mr. Stephany also testified that she never made any agreement to convey; that she is unwilling to release her dower and refuses to do so, and that the lease and option were given without her knowledge or consent.

*Mr. Clarence L. Cole,* for the complainant.

*Mr. Robert E. Stephany* and *Mr. George A. Bourgeois,* for the defendants.

GREY, V. C.

This case is before me upon the coming in of the order to show cause whether an injunction should not issue restraining the defendants from enforcing their distraint for rent, and from interfering with the complainant's possession of the demised premises and of the goods seized under the distraint. The complainant's defence to the distraint is based solely upon her claim that by the terms of the lease she is entitled to exercise an option to purchase; that she has done this, and that the defendants, who hold the legal title, are bound to convey to her, and therefore may not equitably enforce the distraint for rent which came to be due since the demand made for a conveyance, for which she proffered herself ready to pay, or take any steps to interfere with her possession of the premises. The defendants deny that the complainant has any right to a conveyance either under the lease or otherwise. The complainant must therefore, in order to maintain her claim to the restraint she seeks, sustain her right to the conveyance demanded by her bill.

That there was a mistaken omission in the option clause of

McCormick *v.* Stephany.

the lease is, I think, fully proven by the uncontradicted affi-
davits filed by the defendants, and among them of the typewriter
who made the omission. This mistake was in the written ex-
pression of the contract, the proofs showing that it did not set
forth the intent of the parties and also what that intent was.
Such a mistake may be set up as a defence in a suit for specific
performance. *Hawralty* v. *Warren, 3 C. E. Gr. 127.* But the
utmost effect the proof of the mistake can have is to require the
court to consider the contract as if the omitted words were in-
serted. If this clause be amended by putting in the omitted
words, it does not, in the present attitude of the case, affect the
complainant's right of performance. The first part of the para-
graph is an absolute agreement that if the lessor finds a pur-
chaser for the premises the lessee shall have the option during
the continuance of the lease to buy at the price named. Under
this the complainant seeks to enforce a conveyance to herself.
The succeeding clause, where the omission occurs, only becomes
applicable in case, on notice, the lessee refuses to buy. No such
circumstance has occurred, so that neither the mistake nor its
correction affects the complainant's right to relief, save that the
omitted words may, when restored, throw some light on the
meaning of the previous clause. As the proof of the mistake is
undisputed, I shall consider the words as if restored.

It is objected by the defendants that this clause giving the
privilege to demand the conveyance, is unilateral and without
consideration. If this clause is considered separately it does
appear to be unilateral and states no specific consideration. But
it forms part of the lease which is signed by both parties, and
is under their seals, which import a consideration. The later
decisions appear to have established the rule that where an
option to purchase is proffered in a lease of lands, there is a
sufficient consideration, as the privilege must be treated as part
of the lease, operating as an inducement to its acceptance by the
lessee, and to the agreement to pay the rent reserved. In such
cases specific performance will not be refused in equity because
the agreement is unilateral or without consideration. *Hawralty*
v. *Warren, 3 C. E. Gr. 126 ; Page* v. *Martin, 1 Dick. Ch. Rep.*

McCormick *v.* Stephany.

*585; Ten Eyck* v. *Manning, 7 Dick. Ch. Rep. 50; Waters* v. *Bew, 7 Dick. Ch. Rep. 791.*

The defendants call attention to a clause in the lease providing that if any default should be made in any covenant then the lease should be void. That one covenant was "not to use or permit any part of said premises to be used for any other purpose than a saloon, restaurant or dwelling." That on McCormick's death the place was closed, and they claim that this was a breach making void the lease. There is no showing that the demised premises have been "used for any other purpose than a saloon, restaurant or dwelling." The covenant is to be construed according to its terms, which are clear—they prohibit a different use, but they do not compel a continued use for the purpose named. The premises are still plainly occupied if not actually used as a saloon and restaurant. This appears from the list of goods distrained for rent, annexed to the bill. The same misconception of this covenant appears in the defendants' contention that the lease became void, because McCormick in his will directed that the business be discontinued. He had not covenanted to continue it, but only not to use the premises "*for any other purpose.*"

The defendants also contend that the option to purchase contained in the lease was limited to be exercised by McCormick in his lifetime, and that as he did not demand performance while living, his legatee or devisee cannot do so after his death.

It seems to be settled that the residue of the term of an unexpired lease for years goes to the executor or administrator of the lessee, and not to the heir. *Doe* v. *Porter, 3 T. R. 16; James* v. *Dean, 15 Ves. 241; Wms. Extr. (9th Am. ed.) 818.*

Lord Denman, in *Rubery* v. *Stevens, 4 Barn. & Ad. 244,* declared that an executor could not refuse the unexpired term of the lease of his deceased testator lessee. With the lease the right to its renewal contained in it goes to the executor. *Wms. Ex. 818.* So an unexercised option to purchase, incident to a lease, passes to the administrator or executor of the lessee. *Wms. Ex. 809; Re Adams and Kensington Vestry, 24 Ch. Div. 206; S. C. affirmed on appeal, 27 Ch. Div. 394.* The unexpired term

for years, the privileges of renewal and of purchase are all chattel interests and not real estate. They go primarily to the executors, and afterwards to the legatee, and not to the heir.

In the lease in question there is no express demise to Mc-Cormick, his *executors and administrators,* either of the term, the privilege of renewal or the option, nor is there any express limitation to McCormick during his life ending the term and the privileges of renewal and purchase upon his death. In the absence of such express limitation defeating the term upon the death of the lessee, the unexpired term is an asset in the hands of the executor and administrator. An administrator of a deceased tenant recovered possession even where the tenancy was expressed to be from year to year *so long as both parties pleased. Doe* v. *Porter, 3 T. R. 16.*

In the case in hand, by the express terms of the will all the real and personal estate are given to the complainant. But however absolute may be the gift to her, if the thing given be an asset to be administered, the executor primarily takes it, and all rights touching it must, during the period of administration, be asserted by the executor as such, or it must appear that the executor assents to the possession of the legatee. The bill in this case was filed long before the expiration of the year of administration. In all the preliminary steps the complainant made her demand as legatee and devisee, and the bill appears to be filed not as executrix, but in assertion of the individual rights of the complainant as legatee of the term, and contains no allegation that the executrix had assented to the possession by the complainant of the residue of the term and its attendant privileges. This omission to define the complainant's position was probably occasioned by the fact that the complainant happens to be at one time executrix and general legatee and devisee, nevertheless the defendants are entitled to know in what capacity or capacities the complainant asserts her rights. No objection has been made to the bill by pleading or otherwise because it is filed by a legatee, while the rights sought to be protected vested in the executrix and are not shown to have passed out of her control. The bill does, however, show that substantially all of

McCormick v. Stephany.

the debts have been paid, and therefore the situation of the estate is such that the executrix might properly assent to the possession of the legacy, and the omission of the complainant to appear as executrix, or to show assent to the possession of the complainant as general legatee, is readily curable by amendment.

As the complainant is not only executrix but also general legatee and devisee of Mr. McCormick, the proposed vendee, the vexatious questions which sometimes make difficulty between the executrix and legatee, and the heir or devisee, of such a vendee, as to whether or not the effect of the enforcement of the option is to work a conversion of the purchase-money payable by the vendee into real estate, and to give the purchased lands to the heir or devisee of the deceased contract vendee, are not raised, because the complainant, in one capacity or the other, represented the deceased vendee both as to his personalty and his realty.

The limit for the exercise of the option was not Mr. McCormick's life, but during the continuance of the lease.

The demand for conveyance having been made upon Mr. Stephany in his lifetime, and that being the alleged exercise of the option on which conveyance is sought to be enforced, his administrator and also his heirs-at-law are properly made parties defendant.

There is another matter, however, which, in the present frame of the bill, stands in the way of the granting of the relief sought.

The bill makes defendants and calls for answer from Louise Stephany (the widow of the lessor) as widow and as administratrix of the deceased lessor, Stephany, and as guardian of his minor children, and also makes all of the children (except Robert, who is alleged to have conveyed his interest to his mother) defendants as heirs-at-law. The prayer is that Louise Stephany, Louise Stephany, administratrix, &c., and Louise Stephany, guardian, &c., and also the children may be decreed to convey, &c. No suggestion is made that the widow's dower is not to be affected by the conveyance sought to be compelled from her. The phrasing of the bill indicates a purpose to require a conveyance from Mrs. Stephany of all her interest, including that which

he holds as widow, and nowhere is there any disclaimer of such a design, or an offer to accept a conveyance solely of the estate of which Mr. Stephany was seized at the time of making the contract, not including his wife's dower right. Special decree is asked as against all of the defendants, including the widow, to the effect that the complainant is the legal owner of the property. One of the demands shown to have been made upon Mr. Stephany called for a "deed with full covenants," another for a "deed of conveyance with full covenants free of all encumbrances."

The case presented in this and several other incidents, stands very nearly upon the lines of *Hawralty* v. *Warren, 3 C. E. Gr. 124,* where the complainant required a marketable title, and was denied a decree for specific performance when it appeared that a wife refused, as does the widow in this case by her affidavit, to release her dower. The case cited is based upon the principle expounded by the court of errors in *Young* v. *Paul, 2 Stock. 418,* where that court, though decreeing performance by the husband with an indemnity against the wife's inchoate right of dower, distinguished that case from one where the wife's refusal to join in a conveyance which her husband had agreed should be made, was in good faith, and not the result of her husband's interference. *Hawralty* v. *Warren* has been followed in *Pinner* v. *Sharp, 8 C. E. Gr. 282; Reilly* v. *Smith, 10 C. E. Gr. 159.*

In the case in hand nothing appears which bound Mrs. Stephany to convey her dower right. She declares she is unwilling to convey. No bad faith is imputed to her husband or to the heirs touching her refusal, yet the bill makes her defendant in every capacity in which she can be related to Mr. Stephany's estate, and prays against her a decree for conveyance.

The rule seems to be settled that a husband will not be decreed to procure the release of dower of an unwilling wife, and several of the cases hold that indemnity will not be awarded against the dower right where the refusal of the wife to release is not procured by the fraudulent contrivance of the husband. *Peeler* v. *Levy, 11 C. E. Gr. 335,* and cases there cited. Whatever force the rule had as applied to a husband acting in good faith

McCormick *v.* Stephany.

during the life of his wife, affecting only her inchoate right, is certainly much increased when, after his death, her right has become complete and decree is sought not only against his heirs, but also directly against the widow.

In *Hawralty* v. *Warren, 3 C. E. Gr. 128,* upon final hearing, the bill was dismissed because it required the conveyance of a marketable title, and the defendant answered that he could not give such a title, as his wife refused to release her dower. In the present case the bill appears to attack the dower right of the widow directly, and to seek to compel its conveyance. In the present stage of this cause the complainant may be willing to amend his bill in this particular, and, if this be done, the principal question in the case can be considered.

The conditions under which, by the terms of the lease, Mc-Cormick might purchase the premises are that if Stephany "should find a purchaser for said premises," McCormick might, during the continuance of the lease, buy the property for $12,000.

Precisely what these words mean is warmly disputed between the parties, the complainant insisting that the circumstances justifying a demand for conveyance arose, when Stephany found some one who was willing to purchase. The defendants by their affidavits, deny any actual conveyance, and insist that only this can be a finding of a purchaser. The affidavits annexed to the complainant's bill, of Kumerer, Givens, Ketter, all definitely state that they heard Mr. Stephany in his lifetime declare that he had sold the property to one Haines. The testimony of these witnesses is uncontradicted.

I do not think it is necessary, however, on this preliminary hearing to determine the construction of this phrase or the disputed facts as to the existence of the circumstances which may call the agreement into operation. Enough has, I think, been shown to justify the retention of the premises by the complainant, and her protection from distress for rent, until final hearing.

It is quite evident that the only satisfactory remedy the complainant can have, securing to her the benefits of the exercise of the privilege of purchase, is the specific performance of the

agreement. This she can get only by maintaining the present situation and by securing a restraint upon the efforts of the defendants to enforce their legal rights, until the equities of the complainant shall be fully presented and determined on final hearing.

No serious injury will result to the defendants from this course, and so far as rents or purchase-money due to them may come into question, the restraint may be upon such terms that the defendants shall be fully protected.

It may be that the complainant may not be willing to pay the $12,000 purchase-money, and accept a title subject to the widow's dower.

The complainant should amend her bill by definitely asserting her rights as executrix to exercise and enforce the option, or if she claims as legatee of the term and option, she should show an assent as executrix to her possession. The bill should also disclaim any right to a decree affecting Mrs. Stephany's right of dower, and such security should be given as will fully protect the defendants in the premises.

The question of amendment and security may be presented by the complainant upon notice to the defendants' solicitor. Upon compliance with the terms indicated, I will advise a decree for an injunction restraining the enforcement of the distress and the dispossession of the complainant.