Cecile R. WEIL et vir, Appellants,

v.

ANN LEWIS SHOPS, Inc., Appellee.

No. 12816.

Court of Civil Appeals of Texas.

San Antonio.

June 22, 1955.

Rehearing Denied Sept. 7, 1955.

Lang, Byrd, Cross & Ladon, San Antonio, Godbold & Hobbs, Montgomery, Ala., for appellant.

Brewer, Matthews, Nowlin & Macfarlane, Lionel R. Fuller, San Antonio, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by Cecile R. Weil, joined pro forma by her husband, Leonel Weil, against Ann Lewis Shops, Inc., a corporation created under and by virtue of the laws of the State of Delaware and having its principal place of business in the City of New York. The controversy grew out of a lease contract whereby plaintiffs leased to defendant certain property located in the City of Montgomery, Alabama, more particularly described as "Number 3 Court Square, approximately 22½ by 150 feet, grade floor, and approximately 22½ x 60 feet, second floor." The occupancy and use was to be for the conducting of a retail store for the sale of "Ladies', Misses' and Children's ready to wear and accessories and not otherwise." The contract called for a guaranteed minimum rental of $650 per month, and in addition thereto the difference between such guaranteed rental and 5% on the gross receipts of the business conducted in the demised premises. The contract was executed July 24, 1946; the occupancy was to begin on October 1, 1948, and was to continue for a period of 15 years, expiring September 30, 1963. By subsequent agreement the time for the beginning of the lease was changed to January 1, 1949. The defendant never occupied the premises and never conducted a business therein.

The trial court submitted some phases of the case to a jury, but, upon motion for judgment notwithstanding the verdict, entered judgment denying the plaintiffs any recovery based on percentage rentals, and

Cecile R. Weil and Leonel Weil have prosecuted this appeal.

Appellants' first contention is that the court erred in not rendering judgment on the verdict and thereby awarding to appellants percentage rentals in addition to the minimum guaranteed rental of $650 per month, because the lease contract expressly provided that appellee should occupy and use the demised premises for the purpose of conducting a retail store for the sale of "Ladies', Misses' and Children's ready to wear and accessories." In this connection, it might be well to here state that the demised premises were not occupied by anyone for a period of 23 months, beginning on January 1, 1949, and ending on December 1, 1950. During this period appellee paid the minimum guaranteed rental of $650 per month for 13 months and thereafter did not pay anything. The jury found, in effect, by their answer to Special Issue No. 2, that if appellee had occupied the premises and had conducted the business described in the lease, it would have done a gross business of $494,906 during this period. By simple calculation, 5% of this amount would be $24,745.30, and after deducting the $8,450 theretofore paid by appellee, there would be a balance of $16,295 due by appellee for this period.

In answer to Special Issue No. 1, the jury found, in effect, that both appellants and appellee intended at the time the lease was executed that appellee would be obligated to use and occupy the demised premises as a ladies' ready-to-wear store. This issue and the answer thereto were immaterial. The question here presented is whether the lease contract expressly, or by necessary implication, provided that appellee would occupy and use the demised premises for the purposes stated in the contract. The lease contract is written in plain, clear and unambiguous language, and therefore its construction is a question to be decided by the court and not by the jury. 10 Tex.Jur. 329, § 188. The court, in rendering judgment herein, was not bound by the finding of the jury in answer to Special Issue No. 1, to the effect that

the parties intended that appellee should occupy and use the premises as a retail store for the sale of ladies' ready-to-wear. The following annotation is found in Vol. 46, A.L.R. p. 1134:

> "Apart from the question of liability for waste, it seems that the tenant is under no obligation, in the absence of specific provision therefor, to occupy or use, or continue to use, the leased premises, *even though one of the parties, or both, expected and intended that they would be used for the particular purpose to which they seemed to be adapted or constructed.* Goldberg v. Pearl, 1923, 306 Ill. 436, 138 N.E. 141; Moore v. Guardian Trust Co., 1903, 173 Mo. 218, 73 S.W. 143; McCormick v. Stephany, 1898, 57 N.J. Eq. 257, 41 A. 840, modified on other grounds in, 1901, 61 N.J.Eq. 208, 48 A. 25; Burdick v. Fuller, 1921, 199 App.Div. 94, 191 N.Y.S. 442; Rahr's Sons Co. v. Buckley, 1915, 159 Wis. 589, 150 N.W. 994; Dougan v. H. J. Grell Co., 1921, 174 Wis. 17, 182 N.W. 350." (Italics ours.)

■ Appellants contend that the written lease expressly provided that appellee should occupy and use the demised premises for a ladies' ready-to-wear store. In support of this contention they rely upon some ten provisions of the lease. They first present the provision of the lease which states that the premises are rented "for occupation and use as Ladies', Misses' and Children's ready-to-wear and accessories and not otherwise." Clauses similar to this one have been construed in many cases, and it has never been held to be an agreement to occupy and use the demised premises, but only to restrict the purposes for which the premises may be used. Palm v. Mortgage Inv. Co., Tex.Civ.App., 229 S.W. 2d 869. In Dickey v. Philadelphia Minit-Man Corp., 377 Pa. 549, 105 A.2d 580, 581, the Court said:

> "Generally speaking, a provision in a lease that the premises are to be used only for a certain prescribed purpose

imports no obligation on the part of the lessee to use or continue to use the premises for that purpose; such a provision is a covenant against a non-complying use, not a covenant to use."

See also: Parrish v. Robertson, 195 Va. 794, 80 S.E.2d 407; Lippman v. Sears, Roebuck & Co., Cal.App., 271 P.2d 891; William Berland Realty Co. v. Hahn & Co., 26 N.J.Super. 477, 98 A.2d 124; Harden v. Conwell, 205 Ala. 191, 87 So. 673; Percoff v. Solomon, 259 Ala. 482, 67 So.2d 31, 38 A.L.R.2d 1100.

■ Appellants further contend that, when the lease is considered as a whole and especially in connection with some nine other provisions thereof, which appellants discussed more or less in detail, an expressed intention that appellee would occupy and use the premises is shown. It occurs to us that this argument is more in favor of an implied covenant to use and occupy than an expressed one. We have read the entire lease and fail to find any expressed provision that appellee is obligated to occupy and use the premises, and appellants have not pointed out to us any such expressed provision. It seems that if there were such an expressed covenant in the lease appellants could put their finger on it.

Appellants next contend that if there be no expressed provision in the lease requiring appellee to occupy and use the premises for the purposes set forth in the lease then it is the duty of this court to imply such a covenant, under all the facts and circumstances shown herein.

There are many decisions, mostly from other jurisdictions, laying down well defined rules governing implied covenants in lease contracts where there is a provision for a guaranteed minimum rent and a further provision for a percentage rental.

■ The opinion in Percoff v. Solomon, 259 Ala. 482, 67 So.2d 31, 40, 38 A.L. R.2d 1100, by the Supreme Court of Alabama, the State in which the demised premises herein are located, sets forth the rules

concerning any implied agreement on the part of a lessee to occupy and use the premises in a percentage rental contract where there is also a substantial guaranteed minimum rental. The Court said:

"Here appellee seeks to have the court read into the contract of lease matters which could have been written therein with no effort if such had been the intention of the parties.

"An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so; or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument. It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument as a whole. Palm v. Mortgage Investment Co., supra [229 S.W. 2d 869]. * * *

"We have observed that the general rule in the law of contracts is that when the parties reduce their agreements and obligations to writing, the writing, in the absence of mistake or fraud, is the sole expositor of the transaction and intention of the parties. Ramsey v. Wilkins, 253 Ala. 614, 46 So. 2d 407. See Birmingport Lumber Co. v. Chickasaw Wood Prod. Co., 244 Ala. 345, 13 So.2d 770; Jones v. Lanier, 198 Ala. 363, 73 So. 535."

Another case in point here is Lippman v. Sears, Roebuck & Co., Cal.App., 271 P.2d 891, 897, in which the Court quoted with approval from Cousins Inv. Co. v. Hastings Clothing Co., 45 Cal.App.2d 141, 113 P.2d 878, as follows:

" 'Summarized, therefore, the rules deducible from the foregoing authorities controlling the exercise of judicial authority to insert implied covenants may be stated as follows: (1) The implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract. Keeping in mind the above rules, we find nothing in the language employed in either the original lease or the modification, nor in any of the circumstances attending the execution thereof, to support the conclusion that there was an implied covenant requiring defendant to remain in business in the demised premises until the expiration of the term. An examination of the amendatory agreement shows that its terms are clear, definite, and unambiguous; that it was skillfully drawn, and executed only after full discussion and mature deliberation. * * *

" 'Nor is there anything in the nature of the transaction to justify a finding that the implied covenant was indispensable to effectuate the intention of the parties, nor can it be supported on the grounds of legal necessity. On the contrary, as defendant argues, it would seem that the covenant to pay the minimum rental was inserted in the lease as a substitute for an express covenant requiring the continuous operation of the demised premises; that when the rental reserved in a lease is based upon a percentage of the gross

receipts of the business, with a substantial adequate minimum, there is no implied covenant that the lessee will operate its business in the demised premises throughout the term of the lease.' "

■ We agree with these well founded principles of law and feel they should be applied here. The contract was well written and quite lengthy. It seems to cover the parties' entire understanding. It is plain and unambiguous, and we see no reason to write into this contract a stipulation which the parties themselves did not see fit to place therein, to the effect that appellee was obligated to use and occupy the demised premises as a ladies', misses' and children's ready-to-wear retail store, and to conduct that business with such skill and diligence that 5% of the gross receipts would greatly exceed the guaranteed minimum rental of $650 per month.

■ Before we could uphold appellants' theory of this case we would not only have to write into the contract a provision that appellee agrees to and obligates itself to use and occupy the store building for the purposes stated, but also that it would conduct therein a business, according to some certain and definite standard, so as to produce percentage rental in excess of the guaranteed monthly rental of $650. If by any stretch of the imagination it might become our duty to imply in the contract an obligation on the part of appellee to occupy and continue to use the demised premises, we could not possibly, under all the facts here, go further and write into the contract a certain and definite standard by which such business should be conducted so as to make appellee's failure to do so result in damages which could be computed with some degree of certainty. Appellants say that we should require appellee to con-

duct such a business in *good faith*. Any such standard by which to measure the conduct of appellee in the running of its business would be too uncertain. It will be remembered that appellee was to open a new business and there was no past record to furnish a standard of operation. Many of the authorities heretofore cited hold that in addition to an obligation to occupy and use the demised premises there must also be a standard of how that business is to be conducted.

■ Appellants raise still another contention to the effect that, after appellee had refused to occupy the premises for a period of 23 months and the store building was leased to Charles D. Moore, who did use and occupy the premises and did produce gross receipts from the business conducted by him in and on the premises, 5% of which would exceed the guaranteed minimum rental, appellee should have been held to be liable to appellants for the difference between 5% of these gross receipts and the percentage paid by Moore. We cannot agree with this contention. If under the written lease appellee was only obligated to pay the minimum guaranteed rental for its failure to occupy and use appellants' premises, such obligation could not be increased by the process of subleasing the premises to another tenant, who did use and occupy the premises and did produce gross receipts from the business conducted in the demised premises, 5% of which was in excess of the guaranteed minimum rental. This is true whether the subleasing is done under the duty of the lessor to minimize the damages of the lessee or whether it is done under the authority contained in the lease authorizing the lessor to sublet the premises as the agent of the lessee.

The judgment of the trial court is affirmed.