Cramer **REYNOLDS** and Oris Reynolds,
Appellants,

v.

Billy C. **HAYNES**, Abilene Livestock Auction
Commission, a Corporation, and
W. T. Sadler, Appellees.

No. 4195.

Court of Civil Appeals of Texas.

Eastland.

Nov. 10, 1967.

Rehearing Denied Feb. 2, 1968.

**30**

———◆———

Wagstaff, Alvis, Charlton & Alvis, John Alvis, Abilene, for appellants.

Scarborough, Black, Tarpley & Scarborough, Beverly Tarpley, Abilene, for appellees.

COLLINGS, Justice.

Cramer Reynolds and Oris Reynolds brought suit against Billy C. Haynes, Abilene Livestock Auction Commission Company, a corporation, and W. T. Sadler, seeking to recover lost rentals under a lease contract to Haynes and alleged damages to land, improvements and a cattle auction business operated thereon, owned jointly by Cramer, Reynolds and Haynes. Plaintiffs alleged that the defendant Sadler acted jointly and in concert with Haynes in causing their damages and wrongfully in-

terfered with the contractual relationship between them and Haynes. The defendant Haynes filed a cross-action seeking reimbursement for expenditures necessarily made by him for the preservation of the jointly owned property.

The motion of W. T. Sadler for a summary judgment was granted. Based upon a jury verdict, judgment was rendered that plaintiffs take nothing from the defendant Haynes and the corporation and that Haynes have judgment as prayed on his cross-action. The plaintiffs have appealed.

The record shows that in 1956, Cramer and Oris Reynolds and Billy C. Haynes, as equal partners, commenced the operation of a cattle auction business on their jointly owned ten acre tract of land in Abilene. Such relationship constitutes the background for this suit. The purchase price for the property in the amount of $100,000.00 was advanced by Oris Reynolds and by Dr. W. T. Sadler who is the father-in-law of Haynes. Repayment of such purchase price was duly made so that Cramer and Oris Reynolds and Billy C. Haynes each became owner of his one-third interest in the property and business free of any indebtedness. The three owners jointly operated the business for a time and each received one-third of the profits therefrom.

On April 25, 1959, Haynes leased his one-third interest in the property to the Reynolds who operated the livestock sales business until the lease expired on April '62. Thereafter in June of 1962, Haynes again leased his interest in the property to Reynolds at an increased rental for a period of one year with options to extend the lease to 1965. In August of 1962, there was a fire at the south barn on the property which held the main ring for sales of cattle but repairs were made and paid for by the parties out of joint insurance proceeds in the amount of $30,000.00. In February of 1963, the Reynolds gave up their lease on the Haynes interest and leased their two-thirds interest in the property to Haynes for the purpose of operating a livestock

auction business thereon. The consideration for this lease was Haynes' agreement to pay 22¢ per head for all livestock sold, with an accounting to be held weekly. Haynes also agreed to keep the property in repair and not to change the established sales day or the name of the operation, that is, the Abilene Livestock Auction Commission. On the same date Oris Reynolds, for a consideration of $60,000.00 sold and conveyed his interest in the property to Cramer Reynolds, who is the sole appellant of interest on this appeal.

In March of 1963, Haynes formed a corporation entitled Abilene Livestock Auction Commission Company and thereafter operated the business under that name. He instituted some innovations in the conduct of the business in an effort to increase sales, one of which was a weekly newsletter distributed through the mail to several thousand prospective customers. Haynes was president of the corporation and it was his alter ego. He operated the auction through the corporation until February 15, 1964, when the south barn, including the sales ring, office and cafe and a number of adjacent pens were destroyed by fire. This fire was much more extensive than the previous one. The evidence shows that the cattle sales business could not have been continued with the remaining facilities. Insurance proceeds amounted to $95,199.50, which was divided 1/3rd to Haynes and 2/3rds to Cramer Reynolds according to their interest in the property. Haynes was concerned about rebuilding and discussed the matter with Reynolds the day after the fire, but Reynolds stated he was not interested. Reynolds stated to one witness that he was going to put his money in the bank and "wasn't going to have any part of putting any building there." Cramer Reynolds definitely refused to participate in rebuilding the destroyed facilities and Haynes then began efforts to secure a new location with adequate facilities for operation of a livestock auction business.

Rentals were paid by Haynes as provided by the lease to the date of the fire. An old-

er building known as the north barn which contained an auction ring, small office and very limited facilities was also located on the ten acre tract. This north barn and some other pens and facilities were not destroyed by the fire. After the fire two sales on which commitments had been previously made were held in the north barn. The evidence indicates, however, that the north barn and remaining facilities were not adequate for a continued operation of the business. Haynes promptly, on March 4, 1964, mailed a check for rentals due on the two sales at the north barn together with a letter to Cramer Reynolds stating that because of the fire the lease had terminated. Reynolds, with an accompanying letter from his attorney, returned the check to Haynes on July 28, 1964.

On February 28, 1964, after the fire on February 15th, and after Reynolds had refused to participate in rebuilding, Haynes in his livestock auction news letter announced plans to build a new sales barn. In March of 1964, W. T. Sadler, the father-in-law of Haynes, bought a tract of land on northeast interstate 20 in Abilene and caused to be erected thereon a sales barn and other facilities suitable and adequate for the operation of a livestock sales business. In June of 1964, Haynes acting through his alter ego corporation began the operation of a new cattle auction sales business on the land and facilities owned by his father-in-law.

■ It was found by the jury, in effect, that plaintiff suffered no damages by lost rentals or damage to his 2/3rds interest in and to the land, improvements and business in question for the period of the lease remaining after the fire because of Haynes' failure to continue livestock sales at the old location; that the south barn and adjacent pens were substantially destroyed by fire; that cattle sales could not have been continued on the leased premises by utilizing the facilities remaining after the fire; that Cramer Reynolds refused to participate in rebuilding the destroyed facilities; that Cramer Reynolds after the fire abandoned

the good will of the business; that the good will of the business in question was personal to Billy C. Haynes, and that clearing the premises after the fire was necessary for preservation of the property. The evidence, in our opinion, supports these findings and the findings support the judgment.

In appellants' 6th point it is contended that the answer to special issue 1 is not supported by any evidence and is contrary to the great weight and preponderance of the evidence. Special issue number 1, the instructions given in connection therewith and the answer of the jury, were as follows:

"SPECIAL ISSUE NUMBER 1

From a preponderance of the evidence, what amount of money, if any, if paid now in cash would reasonably compensate the plaintiff, Cramer Reynolds, for lost rentals, if any, for the period from February 20, 1964, until the end of the lease period on February 11, 1968?

Answer in dollars and cents, if any.

ANSWER: $  None

In answering the foregoing issue, you are instructed that you will take into consideration what, in reasonable probability, would have become due and payable to Cramer Reynolds, computing such rentals at twenty-two cents a head for animals that in all reasonable probability would have been sold through the auction, had Billy Haynes continued the place of sale at 700 Almond Street."

In other points appellants complain of the action of the court in refusing to submit his requested special issues on damages by reason of lost rentals. These points are not well taken. The lease in question provided for no specific or guaranteed rental. It simply provided that Haynes would pay 22¢ per head on all animals sold through the auction ring. Haynes, by the terms of the lease, would therefore owe nothing in the way of rentals until animals were sold

through the auction ring. The auction ring referred to was the auction ring and facilities specially designed for conducting a cattle sales business located on a 10 acre tract of land at the east end of north 7th Street in the City of Abilene. The property and the facilities thereon were owned by Billy Haynes, Oris Reynolds and Cramer Reynolds.

The fire which occurred on February 15, 1964, destroyed the auction ring and facilities, including the office, cafe, shaping barn and a large number of pens used in connection with the operation of the auction sales business. The jury found upon sufficient evidence that such facilities (the south barn, et cetera) were substantially destroyed by the fire and that the auction sale of livestock could not be continued on the leased premises by utilizing the facilities remaining after the fire.

We cannot agree with appellants' contention that because two sales were held after the fire that the evidence conclusively shows that Haynes did and could have continued operating his business on the leased premises. The evidence shows that the two sales in question were based upon commitments made prior to the fire and were made after the fire with great difficulty and inconvenience. There was ample evidence showing that the remaining facilities were not adequate for a continued operation of the auction sales business on the premises without a major rebuilding operation. Since the auction sales could not be continued on the premises with the remaining facilities, and for that reason sales of livestock were not made, then, under the terms of the lease contract Haynes was under no obligation to pay rentals or other consideration for the lease. He promised only to pay 22¢ per head on livestock actually sold.

Appellants' points complaining of the refusal of the court to give his requested special issues on damages for lost rentals assumed that the destroyed facilities were to

be rebuilt and replaced. As previously noted appellant had refused to participate in rebuilding the destroyed facilities urging that he was under no obligation to do so. Appellants' contention that Haynes had a duty to rebuild the destroyed facilities at his own expense is not tenable. Since neither party had the duty to rebuild, any continued sales on the premises would necessarily have to be made by utilizing the facilities remaining after the fire. The jury found, however, upon ample evidence, that the auction sales could not have been continued by utilizing the remaining facilities. We come again to the conclusion that since the contemplated livestock auction sales could not be continued on the premises and no livestock were thereafter sold thereon, appellee was not obligated to pay rentals of 22¢ per head upon estimated future livestock sales. If under the circumstances it could be held that Haynes was obligated to attempt a continued operation on the premises, any standard by which to measure his conduct of such an operation and the amount of livestock which he could or would have sold would, in our opinion, be an uncertain and questionable basis upon which to compute appellants' damages, if any. Weil v. Ann Lewis Shops, Inc., 281 S.W.2d 651, (Tex.Civ.App.1955, writ ref.). In any event the jury has found upon sufficient evidence that appellant suffered no damages because of lost rentals.

■ Appellants' points relating to his claim for damages for loss of good will because Haynes ceased operations on the old premises and opened a new place of business at a new location, and his point contending that the court erred in overruling his motion for judgment non obstante veredicto are also overruled. The lease under consideration unquestionably contemplated the operation of a livestock auction sales business on the described premises. All the facilities and improvements on the property were appropriate and suitable for the operation of such a business. The Reynolds and Haynes together and individually had operated such a business thereon. The lease in question provided for rentals calculated on the basis of 22¢ per head for animals sold in the operation of such business. The evidence supports the conclusion and the jury found that such business could not have been continued on the premises with the facilities remaining after the fire, and that appellant refused to participate in rebuilding the destroyed facilities. Appellants claim for damages because Haynes ceased to operate the business on the premises after the fire is not tenable. Appellants' own conduct in refusing to participate in rebuilding was responsible for the fact that there was a termination of the business on the premises. These circumstances support the finding that after the fire Cramer Reynolds abandoned the good will of the business.

■ Appellee Haynes by counterclaim sought to recover 2/3rds of the expense of clearing the premises at the location where the fire occurred. The jury found that such clearing of the premises was necessary for the proper preservation of the property. Based upon the verdict, judgment was rendered for Haynes against appellant for 2/3rds of such expense. We overrule appellants' point complaining of the lack and insufficiency of the evidence to support the finding of the jury. We, likewise, do not agree with appellants' contention that since Haynes was in possession of the property when the work was done he was obligated under the lease contract to do all necessary repairs to the premises. Clearing the premises after a fire such as the one shown by the evidence in this case was not contemplated by the provision of the lease that Haynes would "keep the property in reasonable repair." The duty to clean the premises after the fire rested upon the owners of the property in proportion to their interest therein. 15 Tex.Jur.2d 169. The court did not err in holding that appellant was liable for 2/3rds of such expense.

■ We overrule appellants' point contending that the court erred in granting summary judgment for appellee Sadler. No material fact issue is raised by the record concerning Dr. Sadler's right to a summary judgment. Sadler filed his motion for summary judgment with a supporting affidavit stating that he was not a party to the lease contract in question, that he was not a party to any agreement with Cramer Reynolds or Oris Reynolds concerning the livestock auction business; that he had never had any part in the operation of the business known as the Abilene Livestock Auction Commission Company and that he did not have in his possession any property belonging to appellants. Under the pleadings these facts if established entitled Sadler to a summary judgment. Appellants did not properly controvert Dr. Sadler's affidavit asserting the existence of such facts. Appellants did allege that Sadler was fully informed as to the contractual relationship between Haynes and appellants; that he acted jointly and in concert with Haynes so as to seriously damage appellants; that Sadler made large sums of money available to Haynes for the operation of a livestock business, of which ⅔rds was and is owned by appellants. Appellants' affidavit in this connection was general and set out no specific facts upon which the liability of Dr. Sadler could be based.

It was also alleged by appellants that Sadler exercised proprietary influence upon said business and received benefits therefrom in the way of payments from the gross sales of livestock in connection with the operation of said business. In this connection also appellants' affidavit in opposition to Sadler's motion for summary judgment set out no specific facts in support of their general allegation. No controverted material issue of fact was raised. The court did not err in granting Dr. Sadler's motion for summary judgment.

Appellants' points are all overruled. The judgment is affirmed.