United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 3, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-40307

DANIEL G KAMIN KILGORE ENTERPRISES

Plaintiff - Counter Defendant - Appellee

v.

BROOKSHIRE GROCERY COMPANY

Defendant - Counter Claimant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas, Tyler
No. 6:01-CV-611

Before KING, Chief Judge, and DAVIS and EMILIO M. GARZA, Circuit
Judges.

PER CURIAM:[*]

Defendant-Appellant Brookshire Grocery Company

("Brookshire") appeals the district court's denial of summary

judgment in its favor and the district court's grant of summary

judgment in favor of Plaintiff-Appellee Daniel G. Kamin Kilgore

Enterprises ("Kilgore").  We reverse and render judgment in favor

of Brookshire.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

## I.    Factual and Procedural Background

**A.    Facts**

In 1981, Brookshire leased retail space in a strip mall in Kilgore, Texas for the purpose of operating a grocery store. Brookshire was to be the anchor tenant for the shopping center. In return for the retail space, Brookshire agreed to pay to the lessor the greater of either $4,707.69 per month or 1% of Brookshire's net annual sales exceeding $5 million.[1] Kilgore purchased the leased premises in 1994 and is the current lessor of the property.

In 2001, Brookshire completed construction of a new, larger store on land adjacent to the shopping center. Just before Brookshire's lease with Kilgore was up for renewal, Brookshire moved into the new building and vacated the leased property. Nevertheless, Brookshire continued to pay rent under its lease with Kilgore and, to Kilgore's surprise, exercised its option to renew the lease for an additional five years.

**B.    Procedural History**

Kilgore filed suit against Brookshire, alleging that Brookshire breached its obligations under the lease agreement by failing to operate continuously in the shopping center during the

---

[1]    The lease agreement has been amended on three occasions to adjust the rental amount required under this provision. The latest revision requires Brookshire to pay $93,564 annually plus 1% of net sales in excess of $7.6 million.

term of the lease.  Both parties moved for summary judgment.  The district court denied Brookshire's motion and granted Kilgore's, finding that the lease agreement required continuous operation of a grocery store in the leased property.  The parties then entered into an agreement that stipulated the amount of damages but preserved Brookshire's right to appeal the district court's ruling on liability.  After reviewing the agreement, the district court entered final judgment in favor of Kilgore.  In keeping with the parties' stipulation, Brookshire now appeals.

## II.    Discussion

### A.    Standard of Review

We review de novo a district court's decision to grant or to deny summary judgment.  <u>Patterson v. Mobile Oil Corp.</u>, 335 F.3d 476, 487 (5th Cir. 2003); <u>see also</u> <u>Scot Props., Ltd. v. Wal-Mart Stores, Inc.</u>, 138 F.3d 571, 573 (5th Cir. 1998).  "Under Texas law, summary judgment may be granted if the terms of a contract are not ambiguous, such that they 'can be given a certain or definite legal meaning or interpretation.'"  <u>Petula Assocs., Ltd. v. Dolco Packaging Corp.</u>, 240 F.3d 499, 502 (5th Cir. 2001) (quoting <u>Coker v. Coker</u>, 650 S.W.2d 391, 393 (Tex. 1983)).

### B.    Analysis

The parties agree that the outcome in this case depends on our interpretation of the express provisions contained in their lease agreement; this is not, the parties agree, an implied-

3

covenant case. The key language is found in Section 4.01 of the contract,[1] which states:

> Use of Leased Premises. The Leased Premises are leased to TENANT, and TENANT shall use and occupy the same during the term hereof solely for the purpose of conduction [sic] this business of a grocery, produce and meat marketing establishment and other goods, wares, and merchandise usually handled by supermarket [sic], with related items as are carried by supermarket operations generally during the term of this lease.

Both parties contend that this provision is unambiguous and can be interpreted by the court as a matter of law, but each party interprets the provision differently. Kilgore argues that the plain language of Section 4.01--read in conjunction with other provisions in the lease agreement and the circumstances surrounding the lease's execution--requires Brookshire to operate a grocery store continuously in the leased property during the lease term. Brookshire counters that Section 4.01 merely restricts the purposes for which the leased premises may be used and that other provisions of the lease and circumstances outside the lease are irrelevant to the meaning of this unambiguous provision.

The district court agreed with Kilgore's reasoning. Although the court recognized that this case involves an express, rather than implied, covenant, it found the circumstances surrounding the execution of the lease agreement to be useful in

---

[1] The lease agreement has been amended on three occasions, but Section 4.01 has not been altered.

4

discerning the original intent of the parties who signed the lease agreement. First, the court found the percentage-rent provision to be relevant. According to the court, such a provision shows that the parties intended for Brookshire to operate a grocery store; otherwise, there would be no profits generated from which the additional rent would be paid. Second, the court thought it relevant that Brookshire was to be the anchor tenant of the shopping center. Third, the court found the lease provision regarding subletting to be pertinent, since it required Brookshire to operate at least 75% of the premises if Brookshire subleased the premises in part. Fourth, the court found the phrases "during the term hereof" and "during the term of this lease" helpful to discerning the intent of the parties to the lease agreement.

Because state law governs our interpretation of Section 4.01, we look to Texas state court decisions for guidance.[2] In Weil v. Ann Lewis Shops, 281 S.W.2d 651 (Tex. Civ. App.--San Antonio 1955, writ ref'd), the plaintiff had leased certain property to the defendant "'for occupation and use as Ladies', Misses' and Children's ready-to-wear and accessories and not otherwise.'" Id. at 654 (quoting the parties' lease agreement). The contract also had a percentage-rent provision, which required

_____

[2] As we find the position of the Texas courts to be clear, we do not rely on the authority from other jurisdictions cited by the parties.

the defendant to pay a certain minimum rent plus the difference between the minimum rent and five percent of the gross receipts of the business conducted on the leased premises. The defendant, however, never occupied the premises or conducted business there. The plaintiff argued that the defendant had a duty to operate a store in the leased premises and, since it had not done so, the defendant owed to the plaintiff the additional rent it would have paid under the percentage-rent provision, had it actually operated the store.

The Texas court disagreed. According to the court, the language of the contract was "plain and unambiguous"; nothing in the contract explicitly required the defendant to operate the store continuously. Id. at 656. Regarding the occupation-and-use provision, the court opined: "Clauses similar to this one have been construed in many cases, and it has never been held to be an agreement to occupy and use the demised premises, but only to restrict the purposes for which the premises may be used." Id. at 654. The Weil court also declined to imply a continuous-use requirement from the lease, even though the lease included a percentage-rent provision. Id. at 656. According to the court, because the contract was "plain and unambiguous," there was no reason for the court "to write into this contract a stipulation which the parties themselves did not see fit to place therein." Id. The court also noted that it would be problematic to read a continuous-use requirement into the lease, because there would be

6

no "certain and definite standard" by which to judge compliance with such a requirement.  Id.

Although the facts of Weil seem very similar to the facts of this case, Kilgore argues, and the district court held, that the language of the contract here and the circumstances surrounding its execution are relevantly different from Weil.  As explained below, however, we are not persuaded that any differences between this case and Weil take this case outside of Weil's holding.

Kilgore presents three textual arguments for distinguishing Weil and for reading Section 4.01 as a continuous-operation provision.  First, Kilgore points to the word "shall" in Section 4.01 and argues that this word makes the provision here, unlike the provision in Weil, mandatory.  Second, Kilgore contends that the plain meaning of the language here, which is different from the language in Weil, requires Brookshire to operate a grocery store continuously in the leased premises.  Third, Kilgore argues that the use of active and passive clauses in Section 4.01 both distinguishes this case from Weil and points to the correct interpretation of the Section: because of the presence of the passive clause, the active clause can serve no purpose other than to require continuous operation.

We note, at the outset, that the court in Weil did not quote the occupation-and-use provision in full, so it is not clear whether the contract employed active or passive language; nor is it clear whether the language included the word "shall."

7

The language quoted in Kilgore's brief ("the premises are rented") was the court's, not the contract's. Thus, distinguishing Weil on these two grounds, as Kilgore would have us do, is problematic. Even assuming that the language in this case is different from the language in Weil, however, we are still not persuaded by Kilgore's textual arguments.

First, we do not find that the word "shall" distinguishes this case from Weil. We agree that the word "shall" makes Section 4.01's commandments binding on Brookshire, but we believe that the word makes abiding by the use restriction, rather than continuously operating the leased premises, compulsory. In Palm v. Mortgage Investment Co. of El Paso, a Texas court held that no implied covenant to operate a shoe store of the same size and character as had been previously operated arose from the following provision: "Said premises shall be used only for the purpose of a shoe store for retail business and shoe repair shop . . . and for no other purposes whatsoever." 229 S.W.2d 869, 870 (Tex. Civ. App.--El Paso 1950, writ ref'd n.r.e.) (emphasis added). The court noted that "it may be questioned whether there was any implied obligation on the part of the lessee to occupy the premises at all." Id. at 873. If the word "shall" in a use-and-operation provision does not create an implied covenant to operate continuously under Texas law, then surely it does not create an express covenant to do so.

Furthermore, we find that the phrases "use and occupy" and

8

"during the term of the Lease" in the parties' contract do not differentiate this case from Weil.  As previously noted, the premises in Weil were rented "for occupation and use [as a clothing store]" and the court held that this was a use restriction rather than a continuous-operation requirement.  We see no relevant difference between the phrase used in this lease ("use and occupy") and the phrase used in the Weil lease ("for occupation and use").  Nor do we believe that the addition of the phrase "during the term of the Lease" in this contract, which was absent from the Weil contract, changes the nature of the provision; this language simply reiterates that the restriction on use expires when the lease expires.

Finally, we do not agree with Kilgore's contention regarding the relevance of both a passive and an active clause in Section 4.01.  The passive clause ("[t]he Leased Premises are leased to TENANT") and the active clause ("TENANT shall use and occupy the [leased premises for certain purposes]") both serve a purpose, even if we interpret Section 4.01 as a restrictive-use provision. The passive phrase describes the purposes for which the premises were leased and the active phrase commands the tenant to use the premises solely for those purposes.  Thus, our reading of Section 4.01 as a restrictive-use provision gives effect to both provisions.

Kilgore argues that, even if the language of the contracts here and in Weil are not relevantly different, the circumstances

surrounding the contracts' executions distinguish the two cases. First, Kilgore points to Section 4.02 of the lease agreement, which has no counterpart in Weil, and which requires Brookshire to operate at least 75% of the store if the premises were subleased in part. Second, Kilgore finds it significant that Brookshire, unlike the defendant in Weil, was the anchor tenant of the shopping center.

Although we recognize that the Weil contract did not have a similar subleasing provision, and that the Weil defendant was not an anchor tenant, are unpersuaded that these factors should be central to our analysis. The meaning of Section 4.01, as both parties agree, is plain and unambiguous under Texas law. Thus, we need not look to either the other provisions of the contract or the surrounding circumstances to shed light on the provision. See Republic Nat'l Bank of Dallas v. Nat'l Bankers Life Ins. Co., 427 S.W.2d 76, 80 (Tex. Civ. App.--Dallas 1968, writ ref'd n.r.e.) ("Courts do not resort to arbitrary rules of construction where the intention of the parties is clearly expressed in unambiguous language."). These observations would be more relevant if Kilgore argued that Brookshire had an implied duty to operate continuously, but Kilgore strenuously contends that Brookshire explicitly--not implicitly--covenanted to do so. See Weil, 281 S.W.2d at 654 (commenting that an argument in favor of reading the occupation-and-use provision in conjunction with other provisions in the contract was an "argument . . . more in

10

favor of an implied covenant to use and occupy than an expressed one").

In sum, we find that Weil controls the case at hand. Thus, we hold that the restrictive-use provision in parties' lease agreement does not require Brookshire to use the premises as a grocery store continuously during the lease term. As seen in Weil, the existence of a percentage-rent provision does not change this result. See also Scot Props., 138 F.3d at 575-76 (finding no implied requirement of continuous operation under a lease agreement, even though the agreement included a percentage-rent provision). Brookshire pays a substantial amount of minimum rent to Kilgore: $93,564 per year. Cf. Nalle v. Taco Bell Corp., 914 S.W.2d 685, 688-89 (Tex. App.--Austin 1996, writ denied). Thus, it is not necessary--indeed, it would be inappropriate--to imply from the percentage-rent provision that the parties intended for Brookshire to operate continuously. Regardless, as pointed out by the district court, the existence of a percentage-rent provision points more toward an implied covenant to operate than an express covenant, and the parties here agree that this is an express-covenant case.

Texas courts have long required specificity in creating continuous-operation provisions. See Weil, 281 S.W.2d at 654; cf. Palm, 229 S.W.2d at 873-74. The parties to this lease had the option of inserting an express provision requiring Brookshire to operate continuously, but they chose not to do so. Thus, we

11

hold that the lease agreement, and Section 4.01 in particular, does not require Brookshire to operate a grocery store continuously in the leased premises during the term of the lease, but, instead, merely restricts the purposes for which Brookshire may use the leased property.

### III. Conclusion

Accordingly, we REVERSE the district court's grant of summary judgment in favor of Kilgore, REVERSE the district court's denial of summary judgment for Brookshire, and RENDER judgment for Brookshire. Costs shall be borne by Kilgore.